GROSSHART v. McNEAL, Adm'x, et al.

No. 14085—Opinion Filed July 24, 1923.

Rehearing Denied Sep. 18, 1923.

(Syllabus.)

1. Witnesses — Competency— Transactions with Persons Since Deceased.

The rule is that a witness is competent to testify in his own behalf as against his adversary. His disqualification to testify is the exception to the rule. Section 5049, Rev. Laws 1910, disqualifies a witness to testify in his own behalf as to transactions had personally by the witness with a person since deceased, only when the conditions mentioned in said statute exist. Said statute cannot be extended by interpretation to render the witness offered disqualified, except where the opposite party is brought by the express provisions of said statute within one of the classes of persons therein specifically named.

2. Vendor and Purchaser—Bona Fide Purchasers—Grantor Holding in Trust.

One who secures title to real estate from a grantor who holds the same by a conveyance absolute on its face, but who is in fact a holder in trust of the real estate for the use and benefit of others, takes title to said real estate charged with its trust nature, as it was held by his grantor, unless he purchases said property from his grantor for value, in good faith, and without notice of the nature of the title of his grantor.

3. Same—Action to Set Aside Conveyances for Fraud — Defense — Pleading and Proof.

Where real estate is fraudulently conveyed to another in disregard of the trust obligations in which the grantor holds the same, a purchaser who seeks to retain title by reason of having purchased the property for value, in good faith, and without notice, must plead and prove that he is such a purchaser, and his answer setting up such defense against the recovery of the plaintiff pleads affirmative matter, which he must establish to defeat recovery by the plaintiff.

4. Same—Failure of Defense.

Record examined, and held, that the defendant Ross Grosshart failed to establish his affirmative defense that he was a purchaser for value, without notice, and in good faith, of the property sought to be recovered by the plaintiffs, the Lloyds; and that the judgment of the trial court in favor of the plaintiffs decreeing that Ross Grosshart hold the same in trust for the plaintiffs, etc., is sustained by the record. Held, further, that Ross Grosshart should have been given credit on the amount found due by the report of the referee for rents collected by him, to the extent of the amount paid on the note and mortgage held by McNeal, and,

as so modified, the judgment of the trial court is affirmed.

Error from District Court, Tulsa County; Redmond S. Cole, Judge.

Action by Rachel M. Lloyd and others against R. W. Smith, Ross Grosshart, Ruby McNeal, administratrix, and others. From the judgment, Grosshart brings error. Affirmed as modified.

Carroll, O'Meara & Silverman, for plaintiff in error.

McGuire & Marshall, for defendants in error.

BRANSON, J. This action was brought in the district court of Tulsa county, Okla., by Rachel M. Lloyd, Rosa B. Mills, nee Lloyd, and Clarence Lloyd, plaintiffs, against R. W. Smith, Robert J. Boone, J. W. Rogers, John Z. Clayton, Rosa Grosshart, and Ruby E. McNeal. administratrix of the estate of J. W. McNeal, deceased. The plaintiffs brought this action to recover a tract of real estate located in the business district of the city of Tulsa.

For a long time prior to, and on March 28, 1916, the plaintiffs were the owners of said property in fee simple, the same being unincumbered except for mortgages executed just prior thereto to R. W. Smith, one of the original parties to this suit. At the time of the trial of this action in May, 1921, R. W. Smith, who had theretofore been joined as defendant, had departed this life. J. W. Rogers and Robert J. Boone disclaimed any interest in the property, John Z. Clayton's whereabouts could not be ascertained, and therefore not served, and Ruby E. McNeal, administratrix of the estate of J. W. McNeal, deceased, filed her answer and cross-petition in said cause. The answer of Ruby E. McNeal, as administratrix of J. W. McNeal, deceased, pleaded a certain mortgage dated July 10, 1916, and a note executed by John Z. Clayton, in the sum of $15,000, which had by the payee in said note, R. W. Smith, been assigned to J. W. McNeal, for value, and subsequently indorsed by the said Ross Grosshart, as to which indorsement more will be said hereinafter.

There is no contention in this court by either of the parties as to the right of the defendant Ruby E. McNeal, as administratrix of the estate of J. W. McNeal, deceased, to have her mortgage foreclosed to satisfy the amount of the indebtedness found due. This litigation in fact, as it now stands, is between the plaintiff in error, Ross Grosshart, and the defendants in error, Rachel M. Lloyd, Rosa B. Mills, and Clarence Lloyd,

as to the interest or equity in said property over and above the said mortgage. The ownership of said property was in the plaintiffs jointly. The plaintiffs Rosa B. Mills, nee Lloyd, and Clarence Lloyd, being the children of the plaintiff Rachel M. Lloyd, the management and control of said property was by them committed exclusively to their said mother. The transactions out of which the litigation grew were conducted by her, the other plaintiffs acquiescing in whatever she did or was induced to do, affecting the said property, which gave rise to this litigation. This cause was not revived in the name of the administrator of R. W. Smith, deceased, and he is in no wise a party.

The petition, in substance, alleges that in the spring of 1915, plaintiffs made application to the Midland Savings & Loan Association of Denver for a loan on said property of $7,500, to build a brick building then about to be erected thereon, and that said loan association was about to make the loan, when the plaintiffs became acquainted with the said R. W. Smith, and that the said R. W. Smith was offering to loan money on real estate in terms alluring to the plaintiffs, and that they applied to said R. W. Smith for a small loan to cover a small indebtedness over and above the contract price for erecting the building. On making application for said loan, the said R. W. Smith, becoming familiar with the situation, and value of said property, began, as alleged in petition—

"A systematic method of fraud and deception against these plaintiffs, acquiring their complete confidence and poisoning their minds against the persons with whom they had been previously dealing, and by false and fraudulent representations, induced these plaintiffs to believe that said persons with whom they had had previous business relations had defrauded them, and that the plaintiffs had a bona fide cause of action against said persons, and needed the services of an attorney, and induced said plaintiffs to employ the defendant Robert J. Boone to conduct the necessary litigation for them against said persons, thereby leading plaintiffs to believe that he, with the said R. W. Smith, was working for their best interest, and to secure for them rights which they had theretofore lost. That at said time, and as a part of said scheme of deception and fraud against these plaintiffs, the said Robert J. Boone and R. W. Smith, conspiring together for the purpose above stated, led these plaintiffs to believe that the loan made to them by the Midland Savings & Loan Association was a bad business deal, that the rate of interest was exorbitant, and the loan in its provisions unconscionable, and that the management of the

said company's affairs in the city of Tulsa was in the hands of unscrupulous men, with whom it was unsafe for the plaintiffs to deal, and men who would take advantage of the plaintiffs and seek to deprive them of their property, which said representations by said defendants were false and fraudulent, but that these plaintiffs trusted and believed said defendants, and acted upon their advice, and upon said representations, and believing said representations to be true, and being led to believe by the representations of Robert W. Boone and R. W. Smith that additional funds were necessary to clear the property of indebtedness, executed a mortgage to the said R. W. Smith to secure the payment by plaintiffs to the said R. W. Smith for the sum of $1,500."

Then follows the allegation that said $1,500 was converted by the said Smith and Boone to their own use, and that on said representations the said intended loan with the Midland Savings & Loan Association was rejected; that the said property is worth the sum of $35,000, with a large rental value. Then followed a recitation of the details of the seductive methods employed by Smith.

"That in the furtherance of said plan and scheme of fraud and deception, and so conspiring as aforesaid, the defendants R. W. Smith and Robert J. Boone told plaintiffs that it was impossible to rent the property in question, and that the money they had procured, to wit, the sum of $8,500, for which one of said mortgages was given, was minor Indian money, and would have to be repaid in six months, and that the credit of the plaintiffs was not good, and that it would be impossible to secure a renewal of said loan, and that the best and only way for them to save their investment in said property was to deed the property to the defendant R. W. Smith, and that should they wish to sell it to him, the said Smith would agree to give them $15,000 therefor, but that in the meantime the property would be in his name, so that he could get a renewal of the loan, and otherwise manage it to the best interest of the plaintiffs. * * * That after securing deed to the property to be held in trust for plaintiffs, Smith conveyed it to John Z. Clayton July 5, 1916, and Clayton made mortgages back to Smith for $15,000 and $1,500; that thereafter, on July 31, 1916, said Clayton executed the aforesaid warranty deed to the said property to the defendant J. W. Rogers, subject to the said mortgage to the said Smith for $15,000; that thereafter, on February 10, 1917, the said J. W. Rogers executed warranty deed to Ross Grosshart, hereinabove referred to, covering said property, subject to the mortgage of $15,000. That at all times they well knew and had knowledge of the facts hereinabove alleged, and of the existence of the plan, scheme, and

conspiracy hereinabove alleged to have existed, and so acted in furtherance thereof, and in executing and receiving said deeds; that none of the said various deeds, mortgages, or conveyances were in good faith, or were supported by any consideration. That none of the defendants have, or ever had, any right, title, or interest in or to said lands by virtue of any of said conveyances, but that all of the same were procured by fraud, and as such are utterly void and of no effect," etc.

To which petition the defendant Ross Grosshart filed his separate answer, and, among other things, pleaded:

"That he is willing that judgment be rendered for the amount of said note (the McNeal note of $15,000) and for the foreclosure of the mortgage securing the sum as prayed in said cross-petition, provided he has acquired from the defendant Smith and from the defendant Clayton and from the plaintiff a good and marketable title to said property, and provided the decree of foreclosure, if one is made, foreclosed all rights claimed by the plaintiffs. * * * That he bought said property in good faith, and as part of the consideration which he paid therefor he assumed to pay the mortgage referred to in the cross-petition of Ruby McNeal, administratrix. That the said J. W. McNeal, who procured him to write his name on the back of said note, was familiar with all the transactions in reference to this defendant's purchase of the property, and knew and understood at the time that defendant so wrote his name on the back of said note, the purpose for which same was given, and it was at said McNeal's request that his name was so written on the back of said note, after he had already agreed to accept the deed wherein the amount of the mortgage was recited, and where he assumed to pay whatever indebtedness was legally created and assumed by said mortgage. * * *"

With the pleadings upon the material issues as above stated and between the parties really in interest, the cause came on regularly for trial on November 14, 1921, before the district judge of Tulsa county, without a jury. Among other exhibits offered were these: The note and mortgage made by the plaintiffs to the Midland Savings & Loan Association for $7,500; the release of that mortgage, dated March 11, 1916; mortgage from the plaintiffs to R. W. Smith, dated February 12, 1916, in the sum of $1,500; mortgage from the plaintiffs to R. W. Smith, dated March 20, 1916, for $8,500; mortgage dated March 20, 1916, from plaintiffs to R. W. Smith for $700; warranty deed from plaintiffs to R. W. Smith, dated March 28, 1916, reciting a consideration of one dollar, and that the property is free and clear of all incumbrance, except $11,400 in favor of R. W. Smith, which was not assumed by the grantee; a warranty deed from R. W. Smith to John Z. Clayton, dated July 5, 1916; a mortgage from John Z. Clayton to R. W. Smith, dated July 5, 1916, consideration $15,000, evidenced by a note of the same amount and the same date; assignment of mortgage from R. W. Smith to J. W. McNeal, dated July 10, 1916; and mortgage from John Z. Clayton to R. W. Smith, dated July 5, 1916, for $1,500; and warranty deed from John Z. Clayton, a single man, to J. W. Rogers, dated July 31, 1916, excepting the $15,000 mortgage and the $1,500 mortgage above mentioned; also certain lease from Clayton to R. W. Smith, covering said property; warranty deed from J. W. Rogers to Ross Grosshart, dated February 10, 1917, reciting a consideration of $24,000, and excepting the lease he had made to R. W. Smith, and one mortgage in the sum of $15,000, and a second mortgage in the sum of $1,500; a quitclaim deed from plaintiffs to J. W. Rogers, dated May 4, 1917, reciting a consideration of one dollar; deed from Grosshart to R. W. Smith to property in Webb City, Mo., dated September 22, 1917.

After these exhibits were introduced by the plaintiffs and the testimony of the plaintiffs other that Rachel M. Lloyd was taken, the plaintiffs then offered as a witness, Rachel M. Lloyd, one of the plaintiffs herein. Objection was made by the defendant Grosshart to her testimony, on the ground that she was incompetent as a witness to testify as to any transaction had with R. W. Smith, since deceased. This objection was overruled by the trial court, to which the defendant Grosshart saved his exception, and this, with many others, is assigned by the plaintiff in error, Grosshart, as error.

There are a great many assignments of error found in the brief of the plaintiff in error, Grosshart. Many of these assignments grow out of a consideration of the case on a theory other than the one on which it was tried by plaintiffs. To undertake to follow the provisions of the law set forth in the brief in support of each such assignment made, will lead more to confusion of the issues involved herein than to elucidate the real questions at issue before the trial court. The theory of the plaintiff, which makes it unnecessary to discuss most of the assignments of error made by plaintiff in error, Grosshart, is different from that which defendant seeks to fasten onto the plaintiffs.

This case can be properly disposed of by a consideration of assignments numbered 3 and 12; the first to the effect that the court erred in permitting the plaintiff Rachel M. Lloyd to testify concerning transactions had with R. W. Smith, since deceased, and second, to the effect the judgment of the trial court is contrary to the evidence, not supported by sufficient evidence, and contrary to law.

As to the first assignment, supra, the objection made to Rachel M. Lloyd as a witness was by reason of the provisions of section 5049, Rev. Laws Okla. 1910. Said section in part provides:

"No party to a civil action shall be allowed to testify in his own behalf in respect to any transaction or communication had personally by such party with a deceased person, when the adverse party is executor, administrator, heir at law, next of kin, surviving partner or assignee of such deceased person, where such party has acquired title to the cause of action from such deceased person. * * *"

It is contended by the plaintiff in error that under said section of the statute the plaintiff Rachel M. Lloyd was incompetent as a witness to testify as to any conversation or transaction had with R. W. Smith. This and similar statutes have been the subject of discussion in many cases in this court, in the Supreme Court of Kansas, and other states. We think that the rule has been well settled that a statute such as this, that has for its purpose disqualifying a witness to submit testimony in his own behalf, is not to be extended by construction; that the statute is to be strictly construed. Interest in the result of litigation does not operate to disqualify a party as a witness in the absence of a statute so providing. Where a statute such as here undertakes to disqualify a person from testifying in his own behalf, disqualification arises only upon the specific conditions named in the statute itself. The court cannot extend the exception embraced in the statute by interpreting therein provisions not found in the statute itself. Williams v. Campbell (Kan.) 113 Pac. 800; Burlington v. Beard (Kan.) 42 Pac. 320; Sarbach v. Sarbach (Kan.), 122 Pac. 1052; Bryan v. Palmer (Kan.) 111 Pac. 443; Hess v. Hartwig (Kan.) 112 Pac. 99. It will be noted that the statute does not purport to disqualify a person to testify in his own behalf in respect to a transaction or communication had personally by such party with a person since deceased. It does so only when the adverse party is the executor which is not this case; the administrator, which is not this case; heir-at-law, which is not this case; next of kin, which is not this case; surviving partner, which is not this case; or assignee of such deceased person, where such party has acquired title to the cause of action immediately from such deceased person. Confusion often results from attempting to place a strange construction upon statutes couched in words the ordinary meaning of which is clear. The word "immediately," as used in this statute, is one of everyday use and understanding. Unless it is permissible to give the statute an extended meaning, the word "immediately" means directly, or without an intermediary.

The subject of this litigation was the property which the plaintiffs owned, unincumbered at the time of the alleged transactions with R. W. Smith, deceased. The first conveyance which was made from Smith after he acquired the title on March 28, 1916, was a deed to one John Z. Clayton. John Z. Clayton was the immediate assignee of R. W. Smith. Clayton in turn conveyed this property to J. W. Rogers, and Rogers in turn conveyed it to Ross Grosshart. There is nothing in the statute, or in any of the exceptions or limitations thereof, prohibiting this party from testifying in her own behalf. We therefore conclude that the trial court committed no error in permitting Rachel Lloyd to testify as to her transactions with R. W. Smith. Sarbach v. Sarbach (Kan.) 122 Pac. 1052, and cases therein cited; Williams v. Campbell (Kan.) 113 Pac. 800, and cases therein cited.

We go to the second assignment, supra, to the effect the judgment is contrary to the evidence, not supported by sufficient evidence, and contrary to law. Plaintiffs, in effect, say, and this states their theory, that R. W. Smith by seductive persuasion secured the title from them to the property for one principal purpose, that is, to assist them in financing the building then under construction, pay the cost, approximately $8,000, and manage the property for their benefit. In securing it for this pretended purpose, he incidentally said that if plaintiffs decided to sell, he would give $15,000. Secretly Smith intended by this pretense to deprive plaintiffs of their title. Certainly Smith had title only for those specific purposes agreed upon, and he had no title he could convey that the trust nature in which it was held by him would not follow, unless it got into the hands of an innocent purchaser for value without notice. By

the suit.and the judgment of the trial court, it was caught before it got into the hands of such a purchaser.

From the evidence adduced, both documentary and parol, it is not susceptible of debate that in 1915, the plaintiffs being the owners of the real estate hereinabove described and desirous of placing a building thereon, entered into a contract with one J. R. Burnside to erect a brick business house upon said property at a cost of approximately $8,000. In order to pay for said property, a loan was sought to be made with the Midland Savings & Loan Association of Denver. The papers incident to said loan had been executed. when a need for a small amount of additional money was made known by the plaintiff Rachel Lloyd to R. W. Smith, who had advertised himself as having money to loan on real estate. Thus becoming acquainted with R. W. Smith, this inexperienced Indian woman, acting for herself and her said children, was by repeated conversations of Smith induced to believe that she was falling into the hands of grafters, who would eventually deprive her of her property, and that he, Smith, could finance the building, if a conveyance was made to him of the real estate. Credulously relying upon his assurances that the property and the revenues arising therefrom would be held for her benefit, and used only in the proper discharge of the obligations due to the erection of the building, the title was conveyed by all instruments Smith said were necessary. Without going into some small transactions not material to the main issues here involved, Smith continued to own the legal title to said property for about three months from March 28, 1916, a fair inference from the record being that Smith felt sure of retaining the confidence of the plaintiffs for at least a few months. He then executed a warranty deed to one John Z. Clayton. This deed to Clayton was made July 5, 1916, and on the same date the said John Z. Clayton executed a note and mortgage to R. W. Smith, covering said real estate, in the sum of $15,000. On June 10, 1916, said note and mortgage were assigned to J. W. McNeal, and the said deed from Smith to Clayton, the mortgage from Clayton to Smith, and the assignment of Smith to McNeal all went of record in the county clerk's office of Tulsa county, Okla., within a few minutes of one another. On July 31, 1916, the said Clayton conveyed by warranty deed the said property to J. W. Rogers. Rogers testified that he never saw Clayton, that he didn't know him at all. that he was supposed to live in Joplin, Mo., that he never paid Clayton anything for the property, that the property was taken in his name at the instance of the plaintiff in error, Ross Grosshart, that he had no interest in said property of any kind or character, and never had claimed any. Thus far, if John Z. Clayton ever paid anything to R. W. Smith as a consideration for this property, he was indeed generous enough to forthwith and within a few days thereafter convey it to J. W. Rogers, without receiving from Rogers one penny in value as consideration. The plaintiff in error, Ross Grosshart, admitting in his testimony that Rogers took the property for him, Grosshart stated at the time the deed was made from Clayton to Rogers that he never saw Clayton, that he did not know him, that the transaction was had through Smith, but that he paid Clayton $2,000 in money by check on the Exchange National Bank of Tulsa, and conveyed to Clayton certain real estate located in Joplin, Mo. That he had seen the real estate in Joplin one trip he made there, and that a house on the premises was at that time rented and occupied. That the property conveyed to Clayton was property which had been conveyed by one Miller to Grosshart. The bank records of the Exchange National Bank were introduced in rebuttal, and disclosed that Grosshart did not have on deposit at any one time in said bank during the time here in question any such amount of money as the alleged $2,000 Grosshart testified he had paid to Clayton.

Not only the theory of plaintiffs, but that of defendant in presenting his affirmative defense, must be controlling in this court. Defendant's theory was that he purchased the property from Clayton through Rogers, his representative, for value, in good faith, and without notice.

Plaintiffs say that this affirmative defense was not sufficiently pleaded to enable the defendant Grosshart to avail himself of such defense, and in this we agree. Boone et al. v. Chiles (U. S.) 9 L. Ed. 388; Bruce v. Overton, 54 Okla. 350, 154 Pac. 340. and cases therein cited; Pearce v. Foreman, 29 Ark. 563; Ledbetter v. Walker, 31 Ala. 177.

But waiving that, and treating the record as if this defense had been pleaded by the rule announced in said cases, we find that plaintiffs, by competent evidence which was credible to the trial court, established their cases on their theory, supra, warranted by the homely facts. To defeat their recovery, the defendant must sustain and establish his case on his theory: First,

his payment of value to Clayton from whom he purchased; second, his bona fides in the transaction; and third, he had no notice of Smith's fraudulent dealing with plaintiffs' property, or that Clayton, his grantee, was a purchaser in good faith, for value, and without notice.

The only reasonable inference that could be drawn from this record was that Clayton merely held the property for Smith, that he mortgaged it at the instance of Smith to Smith himself, that he executed the note to Smith at the instance of Smith himself, that he executed the conveyance to J. W. Rogers, without consideration, and that if the plaintiff in error paid any consideration of any kind, it was paid directly to Smith. The reason Grosshart gave for putting the property in the name of J. W. Rogers is set forth in his testimony in response to a question by his attorney—

"Q. The deed was taken to Dr. Rogers at your request? A. Yes, sir. Q. How did you happen to do that? A. There were some people in the house at that time that were not legitimate characters, I would say, and I was advised that if I owned the property and handled this property from this standpoint, that I could not get them out of there, and for that reason I took the property in Rogers' name, who was practicing medicine with me at that time, and with his knowledge of the reason and fully explained, until such a time as that could be eliminated and get this straightened out."

As to just what the witness meant by this is difficult to perceive. Whatsoever the purpose of Grosshart was in placing the property in the name of J. W. Rogers, it is certainly true from Rogers himself that he paid Clayton nothing therefor. That if he paid Smith anything therefor, it was conveyance of the alleged property located, not in Joplin, but in Webb City, Mo., more than 13 months after he bought it. Grosshart himself testified that he and Smith were engaged in various other transactions, among them, in putting on a townsite addition near the city of Tulsa. Grosshart testified that, as part of the consideration for the conveyance from Clayton to Rogers, he indorsed the note already assigned by Smith to J. W. McNeal. The record discloses that Grosshart placed his name on the back of the note owned by McNeal on May 25, 1917, whereas the conveyance from Clayton to Rogers was made July 31, 1916. If this transaction was in good faith and a part of the consideration which Grosshart was paying for said property was the indorsement on the note, it seems indeed peculiar that he would not

perform this part of the consideration until a lapse of a period of time from July 31, 1916, to May 25, 1917. In his answer Grosshart pleaded he signed the note at the instance of McNeal. The record discloses that at the time he indorsed this instrument McNeal was requesting a part payment before he would extend it; that Grosshart and Smith went to the bank of which McNeal was an officer, and that they were both present at the time of this transaction. In his testimony Grosshart nowhere undertakes to say that McNeal wanted his indorsement on the note for any purpose other than as a condition precedent to his extending the due date of the note and reducing the interest which the note was bearing.

Defendant did not plead that Clayton was an innocent purchaser for value without notice. Clayton was remarkably altruistic in his spirit. He purchased the property from Smith, made Smith a mortgage and note forthwith for $15,000 and another for $1,500, a paid-up lease to Smith, sold the property to J. W. Rogers, and received nothing from him, but Grosshart paid him for the conveyance to Rogers with a check on his account in the Exchange National Bank, in which there was not sufficient money at any one time to pay it. and which was never paid; and by a deed to property in Joplin, according to Grosshart, the witness, which turned out to be property in Webb City, miles away from Joplin, according to the witness Miller, the former owner, and R. W. Smith, the grantee, instead of Clayton. The purchaser Rogers never saw Clayton; the purchaser Grosshart never saw Clayton; no money was paid him and no property was conveyed to him. He was sued in this action, and no service was able to be had upon him, and no one was able to advise either his "hence or his hither." He made the mortgages and lease back to Smith, and in a few days sold what was left in property valued at $30,000 and rapidly increasing in value, and having rentals accruing which would soon pay off all incumbrances, to Rogers for Grosshart, for which he received nothing. This character of evidence is unavailing to establish either payment or bona fides of the transaction. Grosshart failed to establish his defense.

Under these conditions, a court of equity is asked to find some technicality through which those who have so greatly profited from so generous a donation from their absent benefactor, Clayton, can be shielded

from the retributive effect of the judgment of the trial court.

Can it be said Grosshart was getting this property from Clayton under these conditions as a bona fide purchaser for value without anything to put him on his inquiry as to the means and method of Smith in securing the conveyance and the character of ownership he and Clayton had therein, or can it be said Grosshart has sustained his affirmative defense of bona fide purchaser for value from Clayton? We think not. The conclusion of the trial court is justified by the record.

We do not feel concerned about the property conveyed by Grosshart to Smith in Webb City.

Under these conclusions, we feel if Grosshart had paid the McNeal note, he would have been subrogated to McNeal's mortgage, and the amount thereof paid by Grosshart should be allowed him as a deduction from the judgment rendered on the referee's report, and, as so modified, the judgment is affirmed.

JOHNSON, C. J., and McNEILL, KANE, KENNAMER, NICHOLSON, HARRISON, and MASON, JJ., concur. COCHRAN, J., dissents.