## WHITE v. ARMSTRONG et al.

No. 12657—Opinion Filed April 8, 1924.

Rehearing Denied June 24, 1924.

(Syllabus.)

1. **Deeds—Cancellation for Fraud—Sufficiency of Grounds.**

In an action to set aside a deed for fraud where the weight of the evidence, construed in the light of surrounding circumstances, shows that plaintiff was a minor, or was of inferior mentality, and had been induced to make the deed by the influence, against her will, of the dominancy of superior mentality, or that the consideration was inadequate, or that she was a minor and incapable, or that such deed had been executed under duress and fear, any of such facts constitute grounds for setting aside such conveyance.

2. **Fraud—Definition.**

Fraud embraces all the multifarious means which human ingenuity can devise, and are resorted to by one individual to get an advantage over another by false suggestions or by the suppression of the truth. No definite and invariable rule can be laid down as a general proposition defining fraud, as it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated.

Error from District Court, Craig County; A. C. Brewster, Judge.

Action by Cora White, nee Foster, against R. E. Armstrong and another. Judgment for defendants, and plaintiff brings error. Reversed.

C. Caldwell, for plaintiff in error.

Kornegay & Probasco, for defendant in error.

HARRISON, J. This was an action by Cora White, nee Foster, a Cherokee freedwoman duly enrolled, to cancel a deed to her allotments alleged to have been obtained from her through fraud, coercion, and undue influence, and also upon the further grounds that the deed was executed before she had attained her majority, and that the consideration named in the deed was wholly inadequate, and that she had received none of the consideration mentioned in the deed, but had been defrauded of it all. The defendants' answer in legal effect consisted of only a general denial and specific denial of the facts alleged in her petition. The case went to trial and judgment was rendered in favor of defendants, principally upon what the trial court deemed a preponderance of the testimony.

This being an action for the cancellation of a deed on the ground of fraud, addressing itself to the conscience of the chancellor and invoking his equity powers for relief, this court will weigh the evidence in order to determine whether the judgment of the trial court was against the clear weight of the evidence. Plaintiff stated a clear cause for equitable relief. She alleged, among other things, that she had been raised in the country, had never associated with white people but very little, and was wholly inexperienced in business affairs; that the defendant Armstrong and one Walter White, a paroled negro convict, and one John R. Campbell entered into a conspiracy to defraud her of her land; that the agreement between the conspirators was that Walter White should marry the plaintiff, she being under age, and then procure a deed to Armstrong for a small sum of money, the money to be paid to White and the land to be deeded to defendant Armstrong and that such conspiratous agreement was carried out to the extent, to wit, that said ex-convict negro, White, was sent by Campbell to live with, or to stay a portion of his time with one Champ Harrison, who had rented a portion and resided near plaintiff's allotment, for the purpose of courting her and persuading her to marry him, and to then procure a deed from her to defendant Armstrong as aforesaid; that White came into that neighborhood and remained at least a portion of his time about the premises of said Champ Harrison and did persuade plaintiff to marry him. That they went away from home and into the state of Kansas and got married against her parents' will, and soon after their return home White induced her to leave home on the pretense of going to some "coal banks" and from there to Welch. That when they reached the road to Welch they were met by defendants Armstrong and John R. Campbell in an automobile and taken to Vinita to the home of John R.

Campbell; that a deed had already been prepared for her to sign, covering her allotment and reciting a consideration of $1,400; that she declined to sign the deed, but that said Walter White, her husband, and both defendants insisted that she should sign said deed; that her husband threatened to do her bodily harm if she refused to do so, and that being inexperienced and alone with white people and her negro husband, who was in collusion with the white people, she was coerced to and did sign same; that the deed was in fact executed on Friday. October 17, 1919, the day before she became of age, but was falsely dated October 18, 1919, and the acknowledgment falsely dated, the day on which she did become of age; that no money was paid to her, but that the sum of $300 was paid to her husband, Walter White; that the lands consisted of 80 acres of productive bottom land and was well worth $50 per acre. That immediately upon the execution of the deed, which she alleged was between nine and ten o'clock of the evening of October 17th, she went with an order from John R. Campbell to the Wright Mer. Co. store, where she bought a dress, coat, and hat, and was then sent to Ryder's hotel to stay all night. Ryder and his wife testified that the girl came to their hotel between 10 and 11 o'clock p. m. October 17, 1919. The next day her husband, White, disappeared from the stage with the money he had received and thereafter took no further part in the play. And that thereafter she got in touch with her mother and stepfather, told them of the circumstances and at once began proceedings to set aside the conveyance, and on October 25th, seven days after the alleged execution of the deed, she filed this action to set aside the conveyance.

It was claimed by defendants that the deed was in fact executed on October 18th, after 12 o'clock p. m. of October 17th, and that at the time the deed was executed and acknowledged she was in fact of age. Whether such be the fact or not, is immaterial to a decision of this case. The fact remains undisputed that she was taken to the house of Campbell by deception and coercion and was kept there until near midnight, and the deed executed some time near or after midnight, and though such claim might possibly be true, that it was after midnight that she executed and acknowledged the deed, such fact would tend to corroborate rather than refute her contention that it was executed under inspired fear and with intent to defraud. Nor is the credibility of the hotel man. Ryder, and his wife challenged. nor is there any refutation of their testimony that she

returned to their hotel between 10 and 11 o'clock p. m. of October 17th and after the deed had been executed, and after she had returned from Wright's store.

Besides, there is another circumstance which we observe and which is not explained nor denied by defendants, viz.: That after the deed was executed they went to the Wright Mer. Co. store, which was still open after 12 o'clock in the night, and procured the things which she alleged were bought for her. It hardly seems probable to us that the Wright Mer. Co. store was still open after 12 o'clock in the night, especially in the face of Mr. and Mrs. Ryder's testimony that she returned from said store to their hotel between 10 and 11 o'clock p. m. of October 17th.

And, besides, the conspiratous color of the circumstances that she was induced to leave home on pretense of going to the "coal banks" and that two miles away from home she was met by Campbell and Armstrong in an automobile and carried to the house of Campbell and kept there against her will until after 12 o'clock before the deed was signed and acknowledged, is by no means satisfactorily explained away by any of the evidence or circumstances in the case, hence it is immaterial, in the face of the circumstances and in the face of the unchallenged testimony of credible witnesses that she was an inexperienced country raised negro girl, and by several witnesses that she was regarded as under average mental capacity and intelligence, whether the deed was executed before or after midnight.

Besides, there are a number of witnesses, whose credibility is unchallenged, who testified that her land at the time was worth from $50 to $75 per acre, one witness testifying that he owned adjoining land in the same section, that her land was better than his, and he had a standing offer of $75 per acre for his land.

Besides, there is no evidence, except the testimony of the defendants, that she received any part of the money, except this order to the Wright Mer. Co. upon which she bought the dress, coat, and hat, and the very fact that she was given this order tends to refute the testimony of defendants that she was paid the full consideration in money.

Therefore it is our opinion, under all the circumstances and uncontroverted facts and testimony of witnesses, whose credibility is unchallenged, that the judgment of the trial court in favor of the defendant was clearly against the weight of the evidence.

Besides, it appears from the record that after the trial and overruling the motion for new trial, she filed her petition for a new trial upon the grounds of newly discovered testimony, consisting of letters and overheard conversations, which clearly corroborated and bore out her contention as to conspiracy and fraud, the existence of which she had no means of knowing and the reason why she had no means of knowing is clearly apparent from the record, and that the court committed reversible error in overruling motion for new trial upon the ground of such newly discovered testimony.

To take advantage of her inexperience and inferior mentality and thereby procure a deed against her will and for an inadequate consideration is sufficient fraud to warrant the setting aside of the conveyance. See Etchen v. Texas Co., 82 Okla. 62, 199 Pac. 212.

"Fraud embraces all the multifarious means which human ingenuity can devise, and are resorted to by one individual to get an advantage over another by false suggestions or the suppression of the truth. No definite and invariable rule can be laid down as a general proposition defining fraud as it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated." See Van Winkle v. Hinkle et al., 77 Okla. 34, 186 Pac. 942. Also Pevehouse v. Adams, 52 Okla. 495, 153 Pac. 65.

For the reasons given, the judgment of the trial court is reversed, with directions to enter judgment canceling the conveyance in question and giving plaintiff judgment for costs of this suit.

JOHNSON, C. J., NICHOLSON, COCHRAN, BRANSON, and LYDICK, JJ., concur.