**WEBB, Adm'r, v. BURNAM et al.**

No. 15176—Opinion Filed April 7, 1925.

Rehearing Denied Sept. 22, 1925.

**1. Witnesses—Testimony as to Transactions with Persons Since Deceased.**

The inhibition provided for under section 588, Comp. St. 1921, is leveled against the party who has acquired title to the cause of action immediately from the deceased person, when he becomes a witness and offers to give testimony in respect to any transaction or communication he has had personally with the deceased person.

**2. Evidence—Parol Evidence to Prove Consideration of Deed.**

It is not error to permit parol evidence to show the true consideration of a deed, and such evidence does not violate the rule against changing the terms of a written instrument by parol testimony.

**3. Witnesses—Impeachment by Immaterial Evidence.**

A witness is not subject to impeachment by evidence immaterial to the principal issues.

**4. Deeds—Action to Cancel for Incapacity and Undue Influence—Evidence.**

In an action to cancel a deed on the grounds of mental incapacity of the grantor and undue influence of the grantee, it is error for the court not to take into consideration the evidence as to the consideration for the deed and the value of the land as well as all the other facts and circumstances of the case in determining the questions involved.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Beaver County; Arthur G. Sutton, Judge.

Action by John W. Webb, administrator of the estate of John Traugott Mirtschin, deceased, against A. Menefee Burnam, the Pioneer Mortgage Company, a corporation, and Elmer L. Fickel to cancel deeds and mortgages. Judgment for defendants, and plaintiff appeals. Reversed.

R. E. Dickson and C. H. Mountel, for plaintiff in error.

Loofbourrow & Loofbourrow and Lillard, Hurd & Eidson, for defendants in error.

Opinion by THREADGILL, C. John Traugott Mirtschin was a native German and came to Beaver county, Oklahoma Territory, prior to 1903, and on December 4, 1903, the United States Government issued to him a patent to the S. E. ¼ of S. E. ¼ of section 10 and S. ½ of S. W. ¼ of section 11, township 3 north, range 24 west, in said county. In 1906, he sold and deeded 40 acres to one John Goetzinger. He occupied the 80 acres in controversy as his home and made his living farming. He was eccentric and refused to pay his taxes, giving as his reasons that the government deeded him the land and no one could take it from him; that a public road ran across part of it and the use of this road was sufficient for the taxes, as was the case in Germany; and that he did not have the money to pay with. The land sold for taxes for the year 1912, and one A. Menefee Burnam bought it and the county treasurer made and executed to him a tax deed February 4, 1916. Thereafter, on March 24, 1916, the said Mirtschin made a quitclaim deed to the land to said Burnam and recited $1 as the consideration and said deed was recorded March 27, 1916. On August 27, 1917, said Burnam mortgaged the land to the Pioneer Mortgage Company for $500 and gave a second mortgage for $50. On February 23, 1920, said Burnam deeded the land to Elmer L. Fickel by quitclaim deed, which was received. Fickel acted as notary public in taking the acknowledgments to the deed to Burnam and the mortgages to the Pioneer Mortgage Company, and was acquainted with the transactions. The said Mirtschin was a bachelor and without any known kindred, and occupied the land in controversy from the time he settled on it until a few days before he died in the poorhouse of Beaver county, December 24, 1921. He was old and became ill and had no one to take care of him and was taken to the poorhouse to be nursed. After his death John W. Webb was, on January 13, 1922, appointed administrator of the estate, and

took possession of the land as such administrator, and on March 2, 1922, brought this action against A. Menefee Burnam and Pioneer Mortgage Company and Elmer L. Fickel to cancel the tax deed and the other deeds and mortgages, above mentioned, on the grounds that the tax deed was void on the face of the record, and the deed from the decedent to Burnam was void for the reason the grantor was incompetent to make it and was overreached by Burnam, and the deed to Fickel was void for the same reason, and said Fickel had notice and same for the Pioneer Mortgage Company. After issues joined the cause was tried to the court and a jury and resulted in a verdict and judgment in favor of the defendants, and the plaintiff brings the cause here by petition in error and case-made, asking for a review, and makes seven assignments of error as grounds for reversal, only four of which are discussed in his brief.

1. Plaintiff first contends that the court committed error in permitting the defendant, Fickel, to testify as to conversations and communications had by said Fickel with the deceased. Plaintiff says that he should not have been permitted to testify as to the conversation he heard between the deceased and Burnam relative to the agreement not mentioned in the deed, because he was defendant and an interested party, and the plaintiff was the administrator in possession of the property in controversy. He cites and quotes section 588, Comp. Stat. 1921, as follows:

"No party to a civil action shall be allowed to testify in his own behalf in respect to any transaction or communication had personally by such person with a deceased person when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner or assignee of such deceased person where such party has acquired title to the cause of action immediately from such deceased person," etc.

Plaintiff contends that the words "such party," in the last clause, refer to the parties designated in the preceding clause as "executor, administrator," etc., and not to the party referred to in the first line of the section and upon whom the inhibition to testify is laid. Applying this construction, plaintiff says, since the administrator was the adverse party, acquiring his interest directly from the decedent, and the witness, Fickel, was a defendant, testifying in his own behalf, that he was incompetent so to testify under this statute. Plaintiff cites Grosshart v. McNeal et al., 95 Okla. 102, 218 Pac. 329, and quotes a part of a paragraph in the case on page 105 of the Okla-

homa Report in support of his contention. The part quoted is as follows:

"It will be noted that the statute does not purport to disqualify a person to testify in his own behalf in respect to a transaction or communication had personally by such party with a person since deceased. It does so only when the adverse party is the executor or administrator."

It will be observed that this quotation is true to the text except the last two words which do not appear as quoted. It will be further observed that the quotation is only a part of the court's reasoning on this point under consideration. The closing part of the argument uses the language of the statute: "Where such party has acquired title to the cause of action immediately from such deceased person"; then the word "immediately" is construed to mean "directly or without an intermediary." "Such party" as used in the last part of the argument evidently refers back to the party whose testimony is in question. It is not interest in the result of the litigation that disqualifies the witness to testify to communications and transactions had personally with the decedent, but it is the fact that he has acquired title to the cause of the action from such deceased person and the adversary or "adverse party is the executor, administrator," etc.

Plaintiff also relies on first paragraph of the syllabus in Bellamy v. Bellamy, 93 Okla. 220 Pac. 844. This paragraph reads as follows:

"A party to a civil action is incompetent to testify in his own behalf in regard to any transaction or communication had personally with the deceased, if the adverse party has acquired title to the cause of action immediately from the deceased person."

In quoting this paragraph plaintiff in his behalf, by parenthesis, inserts the word "adverse" between the words "party" and "has" in the last clause, indicating his construction of the meaning, in order to make it fit his contention, but we cannot consent to this insertion as the meaning of the statute or the meaning of the rule quoted.

The witness, Fickel, was a party to the litigation, but he did not acquire his title and interest immediately from the decedent and there was no error in permitting him to testify as to the true consideration agreed on by the decedent and Burnam for the quitclaim deed made to Burnam.

2. Plaintiff contends, in the second place, that the evidence of the defendant, Fickel, was incompetent for the reason that same tended to vary the terms of the quitclaim deed. The evidence referred to and com-

plained of was relative to the agreement made between the decedent and Burnam, at the time the deed was given, that Burnam was to pay the taxes and the decedent was to live on the land during his life. and then Burnam was to have full possession under the quitclaim deed. The cases of Brown v. Conn. Fire Ins. Co., 52 Okla. 392, 153 Pac. 173, and Futoransky v. Pope, 57 Okla. 755, 157 Pac. 905, are cited to support this contention. The first case involved a fire insurance contract containing promissory warranties, and the facts therein related bear no resemblance to the facts in the instant case, neither does the rule stated as to parol evidence in being permitted to alter or contradict a contract in writing have any application to the testimony complained of here.

The second case involved the question of defendant's right to change the terms of a written contract to the effect that a stock of goods was worth $5,000 to show that the same was worth less, and it was held this could not be done. We cannot see how this could be applied to plaintiff's contention. It is true the quitclaim deed was a contract.

The testimony complained of seems to have been for the purpose of showing the true consideration for the deed, and, if this was the purpose of the evidence, it was admissible, but if it was for the purpose of showing a less estate conveyed than the language used in the deed it is not admissible.

It has been held in the case of Tayiah v. Bunnell, 77 Okla. 40, 186 Pac. 240, that:

"The consideration clause in a deed of conveyance is conclusive for the purpose of giving effect to the operative words of the deed, but for every other purpose it is open to explanation by parol proof, and is prima facie evidence only for the amount, kind and receipt of the consideration."

If the testimony of the witness. that it was agreed that the decedent was to continue in possession of the land during his life, was for the purpose of showing that he had a lifetime estate reserved, then it was inadmissible as varying the terms of the estate conveyed on the face of the deed, but if it was error to permit this testimony the plaintiff fails to show that he was injured by it. The decedent did continue in possession until about the time of his death and the rights of the administrator and creditors were not affected by him continued possession, and they certainly suffered no injury by proving that it was agreed at the time the deed was made that he should continue in possession.

3. Plaintiff contends, in the third place, that the court committed error in not permitting him to show that defendant, Burnam, after receiving the quitclaim deed before the death of Mirtschin, took steps to eject him from the premises. This testimony was for the purpose of contradicting Fickel, to the effect that it was agreed that Mirtschin should have possession during his life. If the testimony of Fickel on this point was erroneous it was harmless. We cannot see where this evidence would have benefited the plaintiff. Mirtschin was dead and defendants were claiming under the deed which conveyed full title and the plaintiff does not claim that his interest is affected by the parol agreement.

4. In the fourth place, plaintiff contends that the court committed "error in holding as a matter of law and instructing the jury that it was immaterial whether or not the contract between the deceased and the defendant, Burnam, was conscionable or unconscionable, provident or improvident, that the question of the adequacy of consideration was immaterial and the sole question to be determined was the mental capacity of the deceased, at the time the deed was executed, and that such capacity must be determined without taking into consideration the inherent elements of the contract itself."

This is the language of the assignment and the record tends to show this was the attitude of the court in trying the case. The instruction to the jury on this point was as follows:

"The mental defect or disease necessary to entitle one to avoid his contracts on the ground of incompetency need not be so great as to dethrone his reason nor to amount to entire want of reason, but it is sufficient if he is so mentally incompetent as to be incapable of comprehending or understanding the subject of the contract and its nature and probable consequences. He must, however, be mentally incompetent at least to this extent; mere eccentricity or weakness of intelligence is not sufficient. The question, and the only question for your consideration and determination in this case is whether or not on the 24th day of March, 1916, the said John Traugott Mirtschin was mentally competent to understand the subject of the deed and its nature and probable consequences and to that end an interrogatory will be attached to these instructions to be answered by you."

This was excepted to by plaintiff, and the court added the following words to this paragraph, which were also excepted to by plaintiff:

"Courts cannot make contracts for parties. It is immaterial whether Mirtschin made a

good or bad bargain or a provident or improvident contract. but the sole question is as to his mental competency at the time of making the contract."

The interrogatory submitted for the jury to answer was as follows :

"Was the deceased, John Traugott Mirtschin, capable of understanding the subject of the deed and its nature and probable consequences at the time he executed the same on the 24th day of March, 1916?"

It seems that the court took the view that the facts and circumstances connected with the deed, such as the tax deed, the consideration for the deed he gave, the value of the land deeded, could not be considered as elements tending to show, with all the other facts and circumstances of the case, a weak and incapable mind on the part of the grantor and fraud on the part of the grantee. We think the court's theory of the case on this point was erroneous, and the instruction was incorrect. The deed transaction itself, with its consideration or lack of consideration, and the value of the land should have been considered, and the jury should have been instructed that they could take all the facts and circumstances of the conveyance, the consideration paid, the value of the land, together with all the other facts and circumstances in determining the mental condition of the grantor at the time the deed was given.

In Bishop's Principles of Equity (10th Ed.) section 219, the author states the rule as follows :

"A transaction may be inherently fraudulent, that is to say, its fraudulent character may be inferred from its very nature—for one of two reasons. either, first, because of its terms; or second, because of its subject-matter.

"And first, a contract may be inherently fraudulent from its very terms. Of contracts of this kind, instances will be found in those cases in which inadequacy of consideration sometimes justifies a rescission.

"Ordinarily, inadequacy of consideration will be insufficient to set a bargain aside, or to justify a refusal to enforce its specific performance. Where, however, the inadequacy is so great as to 'shock the conscience' (which is the phrase usually employed), the contract may be rescinded. Cases, indeed. very rarely occur in which inadequacy of consideration exists alone as a ground for rescission; for it is but seldom that a man would make a bargain of such a character, unless he were deceived by actual fraud, or were deficient in intellect, or were subject to undue influence. all of which circumstances would of themselves call for equitable interposition. A case. therefore, of fraud from inadequacy of consideration, pure and simple, and unmixed with any other kind of fraud, is a very rare occurrence. Nevertheless. the rule must be considered as well settled, although rather by dicta than by decisions, that a transaction will be set aside if there is 'an inequality so strong, gross, and manifest, that it must be impossible to state it to a man of common sense without producing an exclamation at the inequality of it'."

See, also, section 928, Pomeroy's Equity Jurisprudence (4th Ed.). In the case of Clayton v. Oberlander et al., 59 Okla. 35, 157 Pac. 929, the court states the rule as follows:

"Where there is a total failure or such gross inadequacy of consideration as to shock the conscience of the chancellor, the court of equity will give weight to slight circumstances tending to show fraud, undue influence, or oppression, in order to set aside a conveyance made under such circumstances. Hogan v. Leeper, 37 Okla. 655, 133 Pac. 190, 47 L. R. A. (N. S.) 475; In re Spann, 51 Okla. 309, 152 Pac. 68; Barker v. Wiseman. 51 Okla. 645, 151 Pac. 1047."

In the case of Guinan v. Readdy, Adm'r., 79 Okla. 111, 191 Pac. 602, the court says:

"Wherever it is shown that a transfer of property was obtained from a person of feeble mind, and that no consideration, or a very inadequate consideration was given in return, a very strong presumption of fraud arises, and unless it is successfully rebutted, a court of equity will set aside the deed so obtained."

See, also, White v. Armstrong, 102 Okla. 156, 227 Pac. 130.

We think the court committed error in not taking into consideration the facts and circumstances of the deed transaction itself, together with all the other evidence of the mental condition of the grantor in determining his competency to execute the deed and the fraud of the grantee in the transaction.

We, therefore, recommnd that the judgment be reversed and a new trial granted.

By the Court: It is so ordered.

Note.—See under (1) 40 Cyc. p. 2273 (1926 Anno). (2) 22 C. J. p. 1162, § 1557. (3) 40 Cyc. p. 2770. (4) 18 C. J. p. 220, § 131.