### CLAMMER v. FULLERTON.
No. 35580.

Supreme Court of Oklahoma.
July 14, 1953.

A. C. Wallace, John R. Wallace and Ben T. Owens, Miami, for plaintiff in error.

Frank Nesbitt, Nelle Nesbitt and Robert E. Nesbitt, Miami, for defendant in error.

WILLIAMS, Justice.

Samuel C. Fullerton, Jr., was administrator with the will annexed of the estate of his deceased father, S. C. Fullerton. On January 16, 1952, he filed in the county court of Ottawa County his final report and petition for decree of distribution. By the terms of the petition for decree of distribution, the administrator made charges in the amount of $12,674.09 against the distributive share of his sister, Katherine Fullerton Moore, in said estate. Said charges were allegedly based upon a "personal ledger kept by the late S. C. Fullerton" listing an account due from Katherine Fullerton Moore in that amount. Briefs filed by the parties herein indicate that Mr. Fullerton, some years prior to his death, gave farms to several of his children, including Mrs. Moore. The account in question was based mainly upon Mr. Fullerton's operation of the farm given by him to Mrs. Moore, after the occurrence of such gift.

Mrs. Moore, whose name is now Mrs. Katherine Clammer, filed exceptions to said final report and petition for decree of distribution, objecting to the charge of $12,-674.09 against her share of the estate.

After a trial on the issues thus joined, the county court held that it did not have jurisdiction to determine the existence or amount of indebtedness of Mrs. Clam-mer to the estate, and further held that the administrator had no legal right to make such charge against Mrs. Clammer's distributive share of the estate, since Mrs. Clammer did not admit the debt, and the indebtedness had not been established by the judgment of a court of general jurisdiction; and further ordered the distribution of the estate without reference to any alleged indebtedness due from Mrs. Clammer to the estate of her deceased father.

In this connection, we take note of the fact that the decision of the county court on the jurisdictional question was erroneous.

See In Re Dayton's Estate, 173 Okl. 180, 46 P.2d 933, wherein this court said:

"The probate court having jurisdiction to make settlement and distribution of a decedent's estate may determine the share of each distributee, and, to that end, can inquire into and determine the indebtedness of the distributee to the estate, and order a deduction of the same from his share."

From said order and judgment the administrator appealed to the district court where, after trial de novo, judgment was rendered finding the issues in favor of the administrator and against Mrs. Clammer, and remanding the case to the county court for further proceedings. Mrs. Clammer has appealed to this court from the last-mentioned judgment and order of the district court, and from the order overruling the motion for new trial filed thereafter.

Plaintiff in error is hereinafter referred to as "respondent" or Mrs. Clammer, and defendant in error as administrator.

One of the propositions urged by respondent on appeal is error of the trial court in the exclusion of certain evidence offered by her in her defense. Since we deem this proposition to be controlling, we will not consider herein the other arguments made.

At various places in the record, it appears that testimony offered by Mrs. Clammer was excluded on the ground, among others, that she was an incompetent witness. One such instance was as follows:

"Q: On June 8, 1943, did you owe your father any money?

"The Court: Just a minute, when was that?

"Q: That is the date of his death.

"Mr. Nesbitt: That is objected to as calling for a conclusion of the witness, in addition to the standing objection that I have.

"The Court: Objection sustained.

"Mr. Wallace: Offer to show that the witness would have answered, no.

"The Court: I assume you are making that same objection to the offer?

"Mr. Nesbitt: I am making my standing objection and in addition the specific objection.

"The Court: Objection sustained to the offer."

The standing objection referred to by counsel was that of incompetency of the witness.

Clearly, the answer sought to be elicited by the above question would not have been a conclusion, but a statement of an ultimate fact. We therefore conclude that the objection was sustained because of the alleged incompetency of the witness.

Another instance was as follows:

"Q: Did you authorize your father to maintain any account showing any indebtedness from you to him? A: No sir.

"Mr. Nesbitt: Objected to for the reason Mrs. Clammer is an incompetent witness.

"The Court: Sustained.

"Mr. Wallace: Exception. Offer to show that the witness would testify that as she has answered, namely that she did not so authorize her father.

"Mr. Nesbitt: To which offer the administrator objects for the witness is an incompetent witness.

"The Court: Sustained."

There was also a long series of questions and answers concerning various checks written by respondent in connection with the operation of a ranch in New Mexico owned by the deceased. By permission of the court, this series was allowed to go into the record as an offer of proof; at the conclusion of the offer, the court sustained an objection embodying several grounds, one of which was incompetency of the witness, Mrs. Clammer.

A careful examination of the entire record herein indicates that the trial court considered 12 O.S.1951 § 384 applicable to the testimony of Mrs. Clammer, the respondent, and unduly restricted her testimony pursuant thereto. Such statute was not applicable, for reasons hereinafter set out. It reads in part as follows:

"No party to a civil action shall be allowed to testify in his own behalf, in respect to any transaction or communication had personally by such party with a deceased person, when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner or assignee of such deceased person, *where such party has acquired title to the cause of action immediately from such deceased person; * * *.*" (Emphasis supplied.)

This section of the statute has previously been considered by this court in Grosshart v. McNeal, 95 Okl. 102, 218 P. 329, 332, wherein it was said:

"Where a statute such as here undertakes to disqualify a person from testifying in his own behalf, disqualification arises only upon the specific conditions named in the statute itself. The court cannot extend the exception embraced in the statute by interpreting therein provisions not found in the statute itself."

In Gaines Bros. Co. v. Gaines, 176 Okl. 576, 56 P.2d 869, 870, the court said with regard to this section:

"Statutes which exclude persons from testifying will be strictly construed in favor of the witness. Classes of persons not named in the statute will not be excluded by implication even though the reason therefor, may seem as strong as those which apply to the persons expressly designated."

In Ward v. Ward, 189 Okl. 609, 119 P.2d 64, 67, cited by respondent, the following language is found:

"But it may be noted that it must further appear that, even though the adverse party may be in one or more of the relations to the deceased person mentioned in the statute, *the party called upon to testify must also have acquired title to the cause of action immediately from the deceased person,* before the statute disqualifies the witness. If the party did not acquire title to the cause of action directly from the deceased person, he is not disqualified under the statute."

See also Webb v. Burnam, 111 Okl. 248, 239 P. 653, 654, wherein the court said:

" 'Such party,' as used in the last part of the argument, evidently refers back to the party whose testimony is in question."

In the case at hand, respondent does not occupy the position of one who "has acquired title to the cause of action" from the deceased person. As a matter of fact, she was not even asserting a cause of action, but was only trying to defend herself against one.

It might be said that there is as much reason to apply this statute to Mrs. Clammer in this case as there is to apply it to the party who has "acquired title to the cause of action" from the deceased. But the statute is to be strictly construed in favor of the witness, Gaines Bros. v. Gaines, supra, and the phrase "such party" in the emphasized portion of the statute quoted above has been construed to refer to the party testifying, not to the executor or administrator, unless he himself is also the party testifying, Webb v. Burnam, supra. The trial court herein theretofore committed error in restricting the testimony of Mrs. Clammer pursuant to this section of the statute.

Applicable here is this language from our opinion in the case of Berry v. Janeway, 206 Okl. 555, 245 P.2d 71, 74:

"We therefore decline to follow Doyle v. Doyle, supra. The rule in Webb v. Burnam, supra, we believe to be correct. Since in this case, the defendant Berry did not obtain title to any cause of action directly from P. A. Janeway, and was not seeking to enforce or prove any such cause of action by his testimony, but merely seeking to defend against an action brought by an heir at law of the decedent, the statute did not prohibit him from testifying concerning his transactions or conversations with the decedent out of which the alleged cause of action arose."

Our previous holding in Doyle v. Doyle, 184 Okl. 572, 89 P.2d 305, referred to in Berry v. Janeway, supra, to the extent same is in conflict herewith, is expressly overruled.

The judgment of the trial court is reversed with directions to grant respondent a new trial.

CORN, DAVISON, ARNOLD, O'NEAL and BLACKBIRD, JJ., concur.

HALLEY, C. J., and WELCH, J., concur in result.