## GUINAN v. READDY, Adm'r.

No. 9607—Opinion Filed May 11, 1920.

Rehearing Denied Aug. 10, 1920.

(Syllabus by the Court.)

1. **Pleading—Variance—Proof of Materiality —Amendment.**

No variance between the allegations in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party, to his prejudice, in maintaining his action or defense upon the merits. Whenever it is alleged that the party has been so misled, that fact must be proved to the satisfaction of the court and it must also be shown in what respect he has been misled, and thereupon the court may order the pleading to be amended upon such terms as may be just.

2. **Deeds—Cancellation for Fraud—Mental Incapacity—Inadequate Consideration.**

Whenever it is shown that a transfer of property was obtained from a person of feeble mind, and that no consideration, or a very inadequate consideration, was given in return, a very strong presumption of fraud arises, and, unless it is successfully rebutted, a court of equity will set aside the deed so obtained.

3. **Depositions—Right to Perpetuate Testimony.**

Unless the right to perpetuate testimony is absolute, the preserving of evidence by deposition in this mode is not favored, and will not be permitted unless where necessary to prevent a failure of justice.

4. **Appeal and Error—Review—Equity Case —Judgment.**

The judgment of the trial court in an equitable action, where the evidence is conflicting, should be given weight, and unless the appellate court is satisfied that the conclusion reached by him was wrong, should be affirmed.

Error from District Court, Pawnee County; Chas. B. Wilson, Assigned Judge.

Action to cancel deed by Isom Readdy, administrator of the estate of Hans Neilson, deceased, against Elnora Guinan and another. Judgment for plaintiff, and defendant named brings error. Affirmed.

Edwin R. McNeill and Redmond S. Cole, for plaintiff in error.

Claude C. McCollum and Iener W. Neilson, for defendant in error.

PITCHFORD, J. This action was commenced in the district court for Pawnee county, by Hans Neilson, as plaintiff, against Elnora Guinan and John R. Guinan, as defendants, to have the deed to an undivided one-half interest in a quarter section of land set aside, on the grounds that at the time he, Neilson, signed the same he thought it was an oil lease. It was alleged in the petition that the plaintiff was aged; that his physical and mental strength had, for the last five years, been impaired and shattered by ill health; that during the last two years he was almost helpless, both mentally and physically, on account of certain physical and nervous ailments to which he was subject; that his eyesight was not good. That during the latter part of 1914, the defendant Elnora Guinan roomed at the same house at which plaintiff roomed; that she, being thus constantly in sight of and in touch with the plaintiff, was well aware of his physical and mental disability; that she pretended to have a sympathy for the plaintiff and to undertake to advise him and guide him in business and practical matters; that plaintiff, reposing special confidence in her integrity and ability, consulting her in a confidential and fiduciary way for advice in regard to the question of leasing land for

oil and gas purposes; that the defendant took advantage of the confidence reposed in her ability and integrity by this plaintiff and deceived and defrauded him by representing that if he would give her an oil and gas lease on the lands in controversy, she would, within a short time, not exceeding six months, drill on said land a well in search of oil and gas; that the plaintiff relied upon the representations so made by defendant, and, so relying, signed his name to a piece of paper which was represented to him by the defendant to be an oil and gas lease; that he did not read the instrument which he signed, but relied wholly upon the representations of said defendant because of his weakness and helpless condition and because of the special confidence which he had reposed in her.

On the 21st day of February, 1916, a disclaimer was filed by John R. Guinan; on the same date, the defendant Elnora Guinan filed a demurrer, which was by the court overruled. Thereafter, on July 11, 1916, the defendant filed an answer which was in the nature of a general denial. On the 26th day of August, 1916, the plaintiff died; the cause being revived in the name of Isom Readdy, the duly appointed administrator of the estate of the deceased. On the 24th day of May, 1917, the cause came on for trial. Upon the conclusion of the evidence, the court made the following findings of fact:

"That at the time of the acts complained of by plaintiff's petition, Hans Neilson was an old man and had been for a long time prior thereto subject to frequent epileptic spells or fits; that at the time of the transaction complained of and for a long time prior thereto he had been in a very weak mental condition, which was the result of his old age and diseased nervous condition; that his mental comprehension of the very ordinary affairs of his life were at all times vague and that at times he was without any intelligent comprehension, whatever, of the most ordinary things; that at the time he executed the deed sought to be cancelled his act in so doing was more mechanical than intelligent; that he was induced to execute the deed by the undue and dominating influence of the defendant exerted by means of her stronger mentality and dominating personality; that said deed was executed without any consideration, whatever, to the said Hans Neilson, without any understanding on his part of the nature thereof, and its execution by the said Neilson was induced by the defendant without any consideration therefor being given on her part, with the intention on her part to thereby cheat and defraud said Neilson, she well knowing at the time, that said Neilson's mind was in such a condition that he could have

no adequate comprehension or understanding of the nature of the act by which he executed said deed, or of the deed itself."

It was ordered, adjudged, and decreed by the court that the deed be canceled.

The errors assigned for reversal of the judgment of the trial court may be grouped under the following heads:

First, that the judgment of the court was against the clear weight of the evidence; second, rejection of evidence showing that the plaintiff, through his counsel, resorted to the courts and prevented the taking of the deposition of Hans Neilson.

First: We have examined the evidence carefully, and fail to see wherein the judgment of the trial court is against the clear weight of the evidence. The trial judge had the witnesses before him. He had an opportunity to observe their demeanor while testifying. Under such circumstances, while the evidence might be conflicting and might have authorized the findings in favor of either party, unless this court can see that the findings and judgment of the trial court were against the clear weight of the evidence, it would be our duty to sustain the judgment of the lower court.

In Deskins v. Rogers, 72 Oklahoma, 180 Pac. 691, it was said:

"In an action of an equitable nature, the Supreme Court will weigh the evidence, and will affirm the judgment unless the same is against the clear weight of the evidence."

To the same effect, see Elliott v. Bond, 72 Oklahoma, 176 Pac. 242; Bruner v. Oswald, 72 Oklahoma, 178 Pac. 693; Day v. Keechi Oil & Gas Co., 72 Oklahoma, 180 Pac. 366; Robertson v. Robertson, 73 Oklahoma, 176 Pac. 387.

In Tescier v. Goyer, 72 Oklahoma, 181 Pac. 503, McNeill, J., said:

"A judgment of the trial court in an equity action, where the evidence is conflicting, should be given weight, and, unless the court is satisfied that the conclusion reached by the trial court is wrong, should be affirmed."

The evidence tends to show that the plaintiff, Hans Neilson, went to Pawnee in the fall of 1914. He secured a room at the rooming house conducted by a Mrs. Seivers. At that time he was a physical wreck; weak-minded; at times he seemed to realize his surroundings, at other times he did not. He had epileptic fits; would fall down, and several times hurt himself badly. After these spells he would be in a dazed condition for two or three days. This condition continued

during his entire stay in Pawnee, and along towards the last these spells would become more frequent. His condition was the subject of conversation among the roomers at the house. Some of the witnesses testified that they did not consider he was competent in a business way; that he was not rational in his talk.

The defendant, Mrs. Guinan, also roomed at Mrs. Seivers'. Chas. W. Sutherlin, who roomed at the same place, testified that his room adjoined that of the plaintiff; that the stove-pipe ran through the partition dividing the two rooms and that conversations in the room occupied by Mr. Neilson could be heard plainly by one occupying the Sutherlin room. He further testified that on one occasion, about seven o'clock p. m., he heard Mrs. Guinan, the defendant, coming down the stairs; that she started to the front. Mr. Neilson opened his door and asked her to come into his room. After she had entered the room, Mr. Neilson was heard to say: "What is this I hear about me giving you a deed?" She said: "You know, Mr. Neilson, you gave me an oil and gas lease; it was not a deed"; and he said: "That is what I thought I was giving you." Sutherlin further testified that on another occasion he heard Mrs. Guinan say to Mr. Neilson: "There is a whole lot of fellows around town mixing up in this business of ours, and you know you only gave me an oil and gas lease, don't you?" And he answered: "That is what I intended to give you." They went on to say she had a lease for six months, and that she was going to start drilling operations in six months.

It further appears from the evidence of the various witnesses that the plaintiff would at times lose all sense of direction, and would have to have someone show him to his room from the restaurant, only a short distance away; the restaurant being on the west side of the courthouse square, and the rooming house one block south of the square. It further appears that the plaintiff, Neilson, gave the defendant $35 with which to buy a suit, and in conversation with one of her lady friends, who was commenting upon the fine material and make of the suit, the defendant stated "that she was going to do the old man for still more; that he was an old fool and she might as well have his property as anyone else."

The doctor who had been treating plaintiff testified that the plaintiff was suffering with senile dementia, which disease had a tendency to render one irresponsible for his

acts; that this disease usually resulted in a general decline of the vital powers, being likened unto a lamp that is going out for want of oil, simply a gradual going down and out.

There is evidence on the part of the defendant to the effect that the plaintiff, in company with the defendant, went to the treasurer's office and each paid one half of the taxes on the 160 acres. Defendant says that this was a recognition on the part of the plaintiff of the deed to the defendant. There is also further evidence on the part of the defendant tending to show that the plaintiff knew the nature of the instrument he was executing.

Our judgment, however, is that the clear weight of the evidence is in favor of the plaintiff. There is no contention on the part of the defendant that any consideration whatever passed from her to the plaintiff. There is no contention on the part of the defendant that she paid even $1 for the property further than the consideration of $1 expressed in the deed. It is true the deed says, "For other valuable considerations," but no other valuable consideration is shown or attempted to be shown.

Section 889, Rev. Laws 1910, provides:

"Conveyance or other contract of a person of unsound mind, but not entirely without understanding, made before his incapacity has been judicially determined, is subject to rescission without prejudice to the rights of third persons, as provided in the articles on extinction of contracts."

Section 906, Idem, defines "undue influence" as follows:

"First: In the use, by one in whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him.

"Second: In taking an unfair advantage of another's weakness of mind; * * * "

Section 265, Black on Rescission and Cancellation, is as follows:

"When it is shown that a transfer of property or other contract was obtained from a person of feeble mind, and that no consideration, or a very inadequate consideration, was given in return, a very strong presumption of fraud arises, and, unless it is successfully rebutted, a court of equity will set aside the deed or contract so obtained."

In view of all the evidence in the case, we are irresistibly drawn to the conclusion that the defendant was simply carrying out her

boast to her lady friend when she said: "I am going to do him for still more; he is an old fool and I might as well have his property as any one else."

It is contended, inasmuch as the action was brought by the plaintiff to have the deed canceled on the ground that the defendant represented she was able to and would drill an oil well on the property in question within six months, and that plaintiff relied upon her representation that she was able to drill a well and intended to drill a well, and that the defendant had no intention of drilling a well, and, in fact, was merely scheming to secure the lease instead of the deed, and had gotten plaintiff, because of infirmities of eyesight, to sign the deed to an undivided one-half interest in the land, thinking it was an oil and gas lease on the entire tract, that on this theory the plaintiff brought his suit and on this theory must win or fail, and that if the evidence fails to establish his contention, then he would not be entitled to recover. We do not so understand the petition. The object and purpose of this suit was to have the deed canceled because the same, as charged by the plaintiff, was procured by fraud; that is, that the defendant, knowing the condition of the plaintiff, took advantage of that condition and secured the deed.

There is no material variance between the allegations and the proof. Section 4784, Rev. Laws 1910, states:

"No variance between the allegations, in a pleading, and the proof, is to be deemed material, unless it has actually misled the adverse party, to his prejudice, in maintaining his action or defense upon the merits. Whenever it is alleged that a party has been so misled, that fact must be proved to the satisfaction of the court and it must also be shown in what respect he has been misled, and thereupon the court may order the pleading to be amended upon such terms as may be just."

And section 4791 provides:

"The court, in every stage of action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

This is an equitable proceeding, and in such actions the rules of evidence with reference to fraud are not so strict as in suits at law.

In Bottoms v. Neukirchner, 29 Okla. 104, 116 Pac. 434, in delivering the opinion, Kane, J., in answer to the assignment of error "That there was not sufficient evidence ad- duced at the trial to warrant the court in finding against the defendant on the question of fraud," says:

"On the second point we have examined the evidence with care, and believe that it is sufficient to support the decree of the chancellor. It seems that a lesser degree of proof is required to establish fraud in equity than in law"

—and, further on in the opinion, quotes from Armstrong, etc., v. Lachman et al., 84 Va. 726, 6 S. E. 129, as follows:

"'It is not safe to undertake to define what degree or kind of proof will justify a court of equity in granting relief against fraud, for the proof must satisfy the conscience of the court, and no man would deem it prudent to attempt to define the extent of that indispensable qualification in a judge or a court.'"

In Brooks v. Garner, 20 Okla. 236, 94 Pac. 694, it was said:

"In the case of King v. Moon, 42 Mo. 551-554, the court said: 'While the law will not imply or presume fraud, yet common experience teaches that it is seldom that any direct or positive proof can be obtained in regard to any given transaction, no matter how fraudulent it may be. Fraud, in common with the highest crimes known to law, is commonly made out by circumstantial or presumptive evidence. The very charge implies color and disguise, to be dissipated by indicia alone. Per Cowen, J., Waterbury v. Sturtevant, 18 Wend. (N. Y.) 353. Fraud may be presumed in equity, but must be proved at law. Therefore, courts of equity, it is said, will act upon circumstances as indicating fraud which courts of law will not deem satisfactory proofs, or, in other words, will grant relief upon the ground of fraud, established by presumptive evidence, which evidence courts of law would not always deem sufficient to justify a verdict. Jackson v. King, 4 Cow. (N. Y.) 207, 15 Am. Dec. 354; 1 Story Eq. Jur. arts. 190-193, and cases cited; 3 Greenl. Ev. art. 254. The range of inquiry in the investigation must necessarily be very extensive and bring within its scope all the circumstances bearing upon the question'" Wimberly v. Winstock et al., 46 Okla. 645, 149 Pac. 238.

Second: The defendant strenuously contends that error was committed in rejecting the evidence offered to show that plaintiff, through his counsel, resorted to the courts and prevented the taking of the deposition of plaintiff, Neilson. We fail to find anything in the record or in the brief of the defendant to show wherein, or whereby, the defendant was injured by the action of the court in granting the order restraining defendant from taking the deposition of the

plaintiff. Evidently, the judge in granting the injunction must have been satisfied that the defendant was not entitled as a matter of right to take the deposition of the plaintiff. In 13 Cyc. 837, it is said:

"Unless the right to perpetuate testimony is absolute, the preserving of evidence by deposition in this mode is not favored, and will not be permitted unless where necessary to prevent a failure of justice."

In re Davis (Kan.) 16 Pac. 790, it is said:

"The taking of the deposition of a party in a pending case merely to fish out in advance what his testimony will be and to annoy and oppress him, and not for the purpose of using the same as evidence, is an abuse of judicial authority and process; and a party committed by a notary public for refusing to give his deposition in such a case will be released on habeas corpus."

The order granting the injunction contained, among other things, the following:

"That Hans Neilson, the plaintiff, being a party to the action, and having disclosed his intention of being present in person at the trial of this case, living and being in Pawnee county and within the court's jurisdiction, and there being no tangible or probable reason why he should not be so present, and testify at the trial of the cause, the judge of said court finds that said defendant, their attorneys and all other persons or officials acting for them, or at their instance, should be restrained from taking or attempting to take the deposition of said plaintiff, Hans Neilson."

We fail to see any error in the court rejecting this evidence.

In view of the entire record in the case, we conclude that the judgment of the trial court is entirely in accordance with the spirit of justice, and fully justified by the evidence, and are of the opinion that the same should in all things be affirmed, and it is so ordered.

RAINEY, C. J., and KANE, HARRISON, and JOHNSON, JJ., concur.