Note.—See under (1) 4 C. J. p. 972, §2953; 40 Cyc. pp. 2313, 2317, 2318; 28 R. C. L. p. 496; 5 R. C. L. Supp. p. 1541. (2) 4 C. J. p. 1195, §3234; p. 1199; §3239; p. 1200, §3240; 2 R. C. L. p. 285; 1 R. C. L. Supp. p. 490. (3) 36 C. J. p. 305, §1773; anno. L. R. A. 1916E, 699; 16 R. C. L. p. 649; 3 R. C. L. Supp. p. 589; 6 R. C. L. Supp. p. 968.

## GRIFFITH v. SCOTT et al.

No. 16466. Opinion Filed Oct. 18, 1927.

Rehearing Denied Dec. 6, 1927.

(Syllabus.)

1. **Deeds—Cancellation for Fraud—Confidential Relations and Inadequate Consideration.**

Where it is shown that a transfer of property was obtained from an aged person by one experienced in business transactions, and in whom the grantor reposed confidence and was acting upon the suggestion and advice of the grantee at the time of the execution of the claimed transfer, though such confidential relation arose upon an acquaintanceship of short duration to the time of the transaction, and that no consideration or a very inadequate consideration was paid the grantor, and there is apparent a marked disparity between the parties in mentality as by experience in business affairs, although the transaction could not have been impeached if no such confidential relation had existed, a very strong presumption of fraud arises, and unless it is successfully rebutted, a court of equity will set aside the deed so obtained.

2. **Appeal and Error—Review of Equity Case—Conclusiveness of Findings.**

In chancery cases the court hears the oral testimony of the witnesses, and, like the jury, considers the witnesses, observes their intelligence and capacity, their fairness or bias, their manner or characteristics, and has the opportunity for judging the value of their testimony; and, therefore, the findings of fact are the same as the verdict of a jury, and will not be disturbed on appeal, unless manifestly against the weight of the evidence; and though the finding of the trial court be general, such finding is a finding of each special thing necessary to sustain the general finding.

3. **Same—Judgment Sustained.**

The record examined, and held, that the finding and judgment of the court are amply supported by the record, and are not against the weight of the evidence.

Commissioners' Opinion, Division No. 1.

Error from District Court, Lincoln County; Hal Johnson, Judge.

Action by A. L. Griffith against K. W. Ingham and others to quiet title. J. S. Scott and Sarah Scott intervene. Judgment

for intervener J. S. Scott, and plaintiff appeals. Affirmed.

W. C. Peters, Thomas G. Andrews, Higgins & Berton, H. Tom Kight, and Sid J. White, for plaintiff in error.

Erwin & Erwin, J. T. Blanton, and Blanton, Osborn & Curtis, for defendants in error.

TEEHEE, C. On March 29, 1924, A. L. Griffith, plaintiff below and plaintiff here, filed this action against K. W. Ingham and 19 others as defendants, none of whom appear in the case on appeal, to quiet title of plaintiff to certain real property described as lots 16 to 23, both inclusive, in block 9 in the town site of Key West, Lincoln county, subject only to an oil and gas lease thereon in favor of the Union Petroleum & Supply Company, one of the defendants below, which concern, by all parties to the cause, was recognized as rightly holding such oil and gas lease. Plaintiff's petition in substance alleged that such property was purchased under a quitclaim deed dated December 31, 1923, from J. S. Scott joined by his wife, Sarah Scott, and further deraigned title thereto through mesne conveyances from the government of the United States; that plaintiff's grantors at the time of purchase were in open, notorious, and exclusive adverse possession of said property for more than 15 years prior to his purchase; that said grantors had, on December 5, 1923, executed and delivered to the Union Petroleum & Supply Company the oil and gas lease mentioned; that by virtue of the said quitclaim deed plaintiff acquired all the right, title and interest of his grantors in and to said property, including all the right, title and interest in and to the one-eighth part of all oil produced and saved from any development of said property under said oil and gas lease, and that such lessee had no other or further interest in said premises other than its working interest under said oil and gas lease; that all of the other said defendants, who are not necessary here to be named, asserted some interest in and to said property adverse to plaintiff's ownership and interest therein, which adverse claims constituted a cloud upon his title to said premises, and thereupon prayed for clearance of his title there against, and that said defendants and those claiming under them be adjudged to have no interest in and to said premises.

On June 12, 1924, plaintiff's grantors, J. S. Scott and Sarah Scott, filed their application to intervene in said cause, and be made parties defendant therein, on the ground that the quitclaim deed upon which plaintiff predicated his action was not the deed and instrument of said intervene.s, and prayed that they be permitted to thus intervene and plead against the claim of plaintiff, and any and all other claims of the other defendants which in any way constituted a cloud upon the title of said interveners in and to the said premises, except as against the oil and gas lease held by the defendant Union Petroleum & Supply Company, the verified answer and cross-petition of said interveners being tendered with their motion of intervention. The application was by the court granted, and such answer and cross-petition on said date was thereupon filed.

The material part thereof here involved is as follows:

"For further answer and cross-petition to the plaintiff's petition, these defendants further allege:

"That they are the owners of the lots mentioned and described in plaintiff's petition, being lots 16 to 23, inclusive, in block 9 of the town site of Key West, in Lincoln county, Okla., subject to an oil and gas lease contract made by these defendants to the Union Petroleum & Supply Company of date of December 5, 1923; these defendants further answer and say that if they signed or executed the quitclaim deed, a copy of which is attached as plaintiff's 'Exhibit A' to plaintiff's petition, the execution of the same by these defendants was obtained by fraudulent misrepresentations, deceit, trickery and artifice, in this: That the defendant J. S. Scott was the owner and holder of the record title to said premises at said time, and that Sarah Scott has no right, title, interest or estate in said lands except as the wife of the defendant J. S. Scott; that J. S. Scott is a negro, and is about 73 years of age, old, infirm and decrepit; that he is unable to read and understand written and printed instruments involved in land titles, and is compelled to rely upon the honesty of the parties with whom he is dealing with respect thereto.

"That on or about the date said instrument is alleged to have been executed, the said plaintiff had been frequently in this defendant's presence and by reason of his friendship and conduct toward this defendant had secured the confidence of this defendant: that this defendant had entered into other contracts with the said plaintiff and said plaintiff had assumed to entertain much solicitude for this defendant's welfare and had sought to and had advised this defendant respecting other business transactions, and that by reason of such conduct had inspired this defendant J. S. Scott's confidence in the honesty and integrity, as well as the good judgment, of the plaintiff

herein; that on the said occasion, the said plaintiff had advised and encouraged this defendant in making and delivering to certain of his children, instruments and conveyances affecting certain real estate owned by this defendant in said town site, and that said plaintiff had prepared said instruments and after the preparation of said instruments these defendants executed the instruments prepared for such purpose, and if they signed the instrument mentioned and attached as an exhibit to plaintiff's petition, that it was signed on said occasion, and the signature of these defendants thereto was obtained by plaintiff through trickery and artifice, and without his disclosing to these defendants that they were signing a deed to him; that these defendants are unable to read and write and comprehend the import and meaning of deeds and instruments affecting the title to real estate, and they relied upon the honesty and integrity and advice and counsel of said plaintiff on said occasion, and that said plaintiff represented and stated to these defendants that said instruments were conveyances of a certain interest in their land to certain of their children and did not indicate to these defendants that any of said deeds was a conveyance to himself of any interest in their lands or real estate; that these defendants further say that the plaintiff paid these defendants no consideration for said conveyance and that they are both old and their mental powers impaired and beclouded, and that they were not able on said occasion to cope with the plaintiff mentally; that the plaintiff is a shrewd, young business man, schooled in the art of conveyancing and familiar with the rules of law; that by reason of the confidence these defendants had in the honesty and integrity of the plaintiff, and by reason of their inability to read and understand deeds and conveyances, the plaintiff secured their signature to said instruments; if in fact they signed the same; that said property at said time was of great value, to wit, the value of $25.000, and that the plaintiff paid these defendants nothing therefor."

On June 27, 1924, plaintiff filed his reply to the answer and cross-petition of interveners as follows:

"That he denies each and every of the allegations thereof which are inconsistent with the allegations of the plaintiff's petition herein.

"And for answer to the cross-petition of said defendants. this plaintiff says:

"That he denies each and every material allegation therein contained which does not admit the allegations of the plaintiff's petition herein."

On December 9, 1924, the cause was called for trial, the same having been rendered at issue as between the principals to the action. with several of said defendants then adjudged to be in default, to whom further reference need not here be made, and thereupon the cause proceeded to trial. The sufficiency of the evidence as to all of the parties was challenged by demurrers which were by the court overruled. Upon conclusion of the hearing the cause was taken under advisement, and on December 15, 1924, the court found generally in favor of intervener J. S. Scott, hereinafter referred to as defendant, and decreed the cancellation of plaintiff's quitclaim deed of December 31, 1923, and of all instruments in the chain of title claimed by the plaintiff, and all other deeds or documents affecting the title to said premises held by all of the other defendants, with the exception of the oil and gas lease held by the defendant Union Petroleum & Supply Company. With respect to the plaintiff and defendant J. S. Scott. the journal entry of judgment recited that:

"The court having heard all of the evidence, and being fully advised in the premises, finds generally in favor of the defendant J. S. Scott and against the plaintiff, A. L. Griffith, except on the allegation of forgery set up in the defendant's cross-petition, and finds that the alleged deed of the plaintiff, copy of which is attached as 'Exhibit A' to the petition, should be canceled."

To the adverse finding and judgment of the court plaintiff excepted, and upon the overruling of his motion for a new trial brought the case to this court for review.

In his petition for review plaintiff sets forth five assignments of error, but urges only two for reversal of this cause, to wit:

"Said court erred in rendering a judgment and decree in said cause which was against the weight of the evidence."

"Said court erred in refusing to render a decree for plaintiff in error against said intervener and all the other defendants in said action, quieting the title of plaintiff in error to the property in controversy"

—both of which are treated under the general proposition that the judgment in said cause is against the weight of the evidence.

Plaintiff first directs our attention to the findings of the court, in that the court found "generally in favor of the defendant J. S. Scott, and against the plaintiff, A. L. Griffith, except on the allegation of forgery set up in defendant's cross-petition," which plaintiff contends is equivalent to a finding in his favor upon the question of forgery. The effect of this contention is that the defendant's charge of fraud, or fraudulent conduct on the part of the plaintiff in his

transactions with the defendant, culminating in the quitclaim deed whereon plaintiff's action was predicated, is eliminated from the cause, and thus the finding of the court is reduced to that of inadequacy of consideration for the property involved. In support of this contention plaintiff points out that the charge made by defendant that "the execution of the same (referring to the quitclaim deed) by these defendants (J. S. Scott and Sarah Scott) was obtained by fraudulent misrepresentation, deceit, trickery, and artifice," under section 2095, C. O. S. 1921, is forgery in the second degree as therein defined, and that for this reason the finding of the court and judgment thereupon rendered must rest upon the single proposition of inadequacy of consideration, as contended: or, in other words, that, when the element of fraud is eliminated, the judgment of the court is against the clear weight of the evidence.

It may here be noted that said section 2095 is a criminal statute, and the forgery therein defined and classified as of the second degree has application to that course of conduct by the individual for which there is laid upon him criminal responsibility. The provision is as follows:

"Any person who, by false representation, artifice or deceit, procures from another his signature to any instrument, the false making of which would be forgery, and which the party signing would not have executed, had he known the facts and effect of the instrument, is guilty of forgery in the second degree."

In our view, the forgery referred to by the court in its findings was that course of conduct on the part of the individual generally defined as the transferring of a genuine signature to a document for which it was not intended, or the material alteration of the instrument signed, as by erasure of the names of the grantees and the substitution in lieu thereof the name of the plaintiff, as that is what was in the mind of defendant J. S. Scott, as is clearly shown by his further pleading. To that extent we agree with plaintiff that these elements of fraud, which were by the court treated as comprehended within defendant's cross-petition, were by the court's findings eliminated, but this did not have the effect of complete elimination of other elements of fraud as will hereinafter be noted.

The question therefore recurs to the sufficiency of the evidence to sustain the judgment of the court. A summary of the vital points of the evidence shows that plaintiff, a white man of intelligence, had large experience in the oil business; that he had formed the acquaintance of defendant J. S. Scott and his family, a few days after the defendant had made and delivered the oil and gas lease to the Union Petroleum & Supply Company, which lease all parties agreed was a valid instrument; that several months prior to this acquaintanceship oil had been discovered about one mile distant from the property in controversy; that plaintiff secured two oil and gas leases several days prior to the quitclaim deed involved on other property of the defendant on two separate occasions with only a small part of the promised consideration for the leases having been paid at the time of the filing of this action by plaintiff; that he was assisted in his transactions with defendant by legal advice; that the defendant is an uneducated negro of more than three score years and ten, and has for more than 40 years been a minister of the gospel; that he lived at Key West for a long time, and in a large measure had reared his family upon the property involved in this controversy, which he had acquired about 16 years before the discovery of oil in that locality; that he did not have that understanding of business transactions in the same degree as that of plaintiff; that plaintiff had gained the confidence of the defendant and other members of his family through his apparent friendliness and his solicitude for defendant's welfare, and in confirmation of this solicitude, plaintiff had suggested and advised that the defendant and his wife by reason of their age transfer the property involved in this controversy and other property not herein involved to his children as in distribution and settlement of his estate, plaintiff advising that his children were abler than the defendant to look after his property, and thus remove defendant from the likelihood of being defrauded of his property; that due to the confidence reposed in plaintiff by the defendant, and the suggestion of distribution of his estate that strongly appealed to defendant as being the rightful thing to do, said defendant and his wife on December 31, 1923, were induced to execute an instrument which defendant and all of the members of his family and another disinterested witness understood to be as in distribution of defendant's estate, and which instrument apparently plaintiff claimed to be the quitclaim deed, the predicate of this action, which plaintiff had filed for record on January 2, 1924. At that time another instrument was likewise executed. One of these the defendant and the members of his fam-

ily believed to be a transfer of the property involved in this action to three of his children, and the other a like conveyance of other property not here involved to his other two children. These supposed deeds were prepared by plaintiff, and upon execution thereof plaintiff took possession of them, and accompanied by one of defendant's sons went to Chandler, the county seat of Lincoln county, defendant having instructed his son to see that the deeds were recorded; that neither of these deeds were filed for record; that he did not learn of the character of the instrument which plaintiff had filed for record until about two weeks thereafter, when the lessee, the Union Petroleum & Supply Company, had proposed the drilling of a well on a particular lot of the property involved under the lease held by it; that he had received no consideration from the plaintiff for the execution of the alleged quitclaim deed, nor at any time thereafter therefor; that at the time of execution of the instrument relied on, plaintiff gave defendant $1, which defendant treated as a gift. Both parties introduced evidence of the value of the property at the time of the transaction. There was, of course, denial by each side of the respective matters on which each relied, but as to conjunction of the parties at the time of the asserted transactions and attendant minor circumstances there was no variance. There was also evidence offered by plaintiff in impeachment of the defendant in that he and others of his family had admitted the execution and delivery of the quitclaim deed to plaintiff. These circumstances the court held sufficient to warrant the interposition of equity.

It may be that each single act or conduct on the part of the plaintiff culminating in the quitclaim deed of December 31, 1923, standing alone, would be insufficient to raise suspicion of an intent on the part of the plaintiff to take an undue advantage of this old negro. Nor would the fact of mental disparity of the parties, and lack of knowledge by defendant of property transactions in the connection here involved, be sufficient to establish fraudulent conduct.

It is clear from the record, however, that though the relationship of the parties was but that of acquaintanceship, yet approximating friendship, and of short duration to the time of the transaction complained of, defendant's confidence in plaintiff ripened and was reposed with childlike simplicity of faith, and with immediate betrayal by plaintiff.

These circumstances, with the solicitude of plaintiff for the welfare of the old negro, were sufficient to give rise to suspicion and warrant the extremely jealous scrutiny of the transaction by the ever watchful eye of equity to determine if in the transaction between the parties there was in fact that imposition on the part of plaintiff that resulted in undue and wrongful advantage.

The disparity of the parties in intelligence and in business capacity, and the relationship between them almost immediately established, induced, we may also well observe, by the recognized superiority of the race of which plaintiff is a member, and the subject-matter of the controversy rendered by oil covetous to the white man's cupidity for gain, make the language employed in Whitesell v. Strickler, 167 Ind. 602, 78 N. E. 845, 119 A. S. R. 524, peculiarly applicable to the case in hand. In that case, though the relationship of husband and wife was involved, the court, in addressing itself to the efficacy of equity, used this language:

"In situations like this, and in all cases where the relations in life are such that influence is acquired by one and confidence reposed by another, so as to give rise to opportunity for imposition or undue influence, such as arise between guardian and ward, parent and child, husband and wife, principal and agent, and the like, and where one of the parties, by reason of his surroundings, is unable to treat with the other upon terms of equality, courts of equity will carefully scrutinize the dealings between them and compel restoration in the absence of absolute fairness. In such cases, says Judge Story, the one subject to undue influence 'has no free will, but stands in vinculis. And the constant rule in equity is that where a party is not a free agent and is not equal to protecting himself, the court will protect him.' I Story. Equity (13th Ed.) sec. 239. And this rule in equity is not confined to formal relations, such as those alluded to, but extends to every case where confidence exists on one hand and influence on the other, 'from whatever cause they may spring'."

This court, in Ewing v. Ewing, 33 Okla. 414, 126 Pac. 811, which involved a fraternal relationship, in adverting to the question of confidential relations, quoted approvingly from other authorities, this language:

"The number or character of the relations, are not defined by law; all the variety of relations in which dominion may be exercised by one person over another fall within the general term 'confidential relations.'

"The term 'fiduciary or confidential relation,' as used in this connection, is a very broad one. It has been said that it exists, and that relief is granted, in all cases in which influence has been acquired and abused, in which confidence has been reposed

and betrayed. The origin of the confidence and the source of the influence are immaterial. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in and relies upon another. The only question is, Does such a relation in fact exist? * * *

"Whenever two persons stand in such a relation that, while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of that confidence is possessed by the other and this confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, although the transaction could not have been impeached if no such confidential relation had existed."

It may be observed, of course, that we cannot disregard the recognized rules by which courts of equity must be guided in this class of cases which require "of all persons the diligence and attention demanded of a prudent man in the transaction of his own business, and establish a measure of care and diligence for each particular case," and that inferiority of mentality generally can afford no ground of relief unless it appears that the complaining party relied upon the superior mentality for information, and acted upon the advice to his injury. This was true in the case in hand, for defendant, conformably to the advice given, executed the instrument that resulted in the injury complained of. And if the proof of value of the property involved tending to show inadequacy of consideration be regarded as unsatisfactory and insufficient to establish fraud, as contended by plaintiff, it is clear to our minds that the court did not proceed on that theory. The effect of the court's findings was that the plaintiff was guilty of a course of conduct the result of which was the quitclaim deed, secured, not for an inadequate consideration, but by taking an undue advantage of the old negro, and by trickery, which in the conscience of the court constituted fraud. As we understand the pleadings, this was in reality the theory of defendant's case, as upon the question of value it was said "that said property at said time was of great value, to wit, the value of $25,000, and that the plaintiff paid these defendants nothing therefor." Hence, as we see the case, the concatenated circumstances and conduct of the plaintiff culminating in the quitclaim deed, which, instead of being a deed in distribution, as was the intention of the grantors, was one of transfer to plaintiff, in the mind of the court constituted such an undue advantage of the old negro that equity could not disregard it, and the court thereupon rightly pronounced the transaction a fraud and hurled the anathema of the law thereagainst.

In this class of cases, where there is involved a course of conduct of like character to that of plaintiff, as disclosed by this record, the probative value of the evidence thereof to establish the fraud is well stated in 12 R. C. L. 440, par. 185, as follows:

"Fraud may be proved by circumstantial evidence. Indeed, from its nature, it is difficult to prove it by direct evidence, and it is seldom that it can be so proved. Hence it is more often shown by circumstances than in any other way. It is impossible, however, to enumerate the facts from which it may be inferred. Each case must depend on its own facts, and all the facts and circumstances connected with and surrounding the transaction are to be considered together in determining whether it was fraudulent. Facts of trifling importance, when considered separately, or slight circumstances trivial and inconclusive in themselves, may afford clear evidence of fraud when considered in connection with each other. It has been said that in most cases fraud can be made out only by a concatenation of circumstances, many of which in themselves amount to very little but in connection with others make a strong case."

Many cases, both state and federal, are cited in support of the different phases of the text.

In support of the judgment of the court, many cases have been called to our attention wherein the principle of equity here involved was applied, but in none of them was there a similar state f facts. In most of the cases cited, inadequacy of consideration was the basic ground of attack. Those in a measure approximating the facts of the case in hand are Haggerty v. Key, 100 Okla. 238, 229 Pac. 548; Rector v. Bay, 91 Okla. 14, 215 Pac. 415; Guinan v. Readdy, 79 Okla. 111, 191 Pac. 602.

Advertising to the application of the principle in Haggerty v. Key, supra, the court said:

"The principle of equity applies that where there is a total want or gross inadequacy of consideration, slight evidence of fraud, overreaching, or undue influence, will justify the cancellation of deeds, the execution and enforcement of which shocks the conscience of the chancellor."

In Rector v. Bay, supra, it was laid down as follows:

"Where the grantee stands in a trust or confidential relation with the grantor, whose mental capacity is impaired by physical disabilities to the point where she is subject to

the influence and directions of the grantee, the latter receives his deed with the hand of suspicion resting thereon, and the burden rests upon the grantee to show clearly that the conveyance was not the result of undue influence, and was the free and voluntary act of the grantor for a consideration commensurate with the value of the property conveyed."

In Guinan v. Readdy, supra, we find this language:

"Whenever it is shown that a transfer of property was obtained from a person of feeble mind, and that no consideration, or a very inadequate consideration, was given in return, a very strong presumption of fraud arises, and, unless it is successfully rebutted, a court of equity will set aside the deed so obtained."

It may be that no case identical in all respects exists, yet, the fact that none of those relied on are altogether in point of fact identical, does not militate against the judgment rendered, for—

"Fraud, indeed, in the sense of a court of equity, properly includes all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence, justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another." Ewing v. Ewing, supra; Moore v. Crawford, 130 U. S. 122, 9 Sup. Ct. 447, 32 L. Ed. 878; 1 Story, Eq. sec. 187.

The rule proceeds upon the theory that there is no wrong without a remedy, and applies the remedy under the name of equity, that synonym for justice as distinguished from the strict and rigid administration of the law. In further confirmation of the principle, this court in Armstrong v. Wasson, 93 Okla. 262, 220 Pac. 643, laid down the rule that:

"Fraud is a generic term which embraces all the multifarious means which human ingenuity can devise and are resorted to by one individual to get an advantage over another. No definite and invariable rule can be laid down as a general proposition defining fraud, as it includes all surprise, trick, cunning, dissembling and unfair ways by which another is cheated, and while fraud must be proved at law, in equity it suffices to show facts and circumstances from which it may be presumed."

This principle of equity jurisprudence is controlling of the cause at bar. The finding of fact by the court, though general, and the judgment thereon rendered, bring the case within the foregoing rules, and in our view the general finding and judgment are amply supported by the record.

"In an equitable action, the presumption is in favor of the finding of the trial court, and it will not be set aside unless clearly against the weight of the evidence. Where the finding of the trial court is general, such finding is a finding of each special thing necessary to sustain the general finding." Weaver v. Drake, 79 Okla. 277, 193 Pac. 45.

"In an equitable action, the finding of the trial court should be sustained unless it appears that its findings are clearly against the weight of the evidence. The findings of the trial court should be strongly persuasive, and should not be set aside unless the Supreme Court can say, in equity and good conscience, that the conclusion reached by the trial court is clearly against the weight of the evidence." Putnam City Co. v. Minnetonka Lumber Co., 95 Okla. 149, 218 Pac. 1061.

"In chancery cases the court hears the oral testimony of the witnesses, and, like the jury, considers the witnesses, observes their intelligence and capacity, their fairness or bias, their manner or characteristics, and has the opportunity for judging the value of their testimony; and, therefore, the findings of fact are the same as the verdict of a jury, and will not be disturbed on appeal, unless manifestly against the weight of the evidence." Moorman v. Pettit, 119 Okla 22, 248 Pac. 838.

The juridical history of this state contains many other cases where like principles with the foregoing have been announced, so that they may now be well regarded as elementary, and that citation of authority in support of a statement thereof is rendered an idle and useless ceremony.

Upon the whole record of this cause, therefore, we are not, in equity and good conscience, prepared to say that the general finding of the court and the judgment thereon rendered are manifestly against the weight of the evidence. Accordingly the judgment of the district court is affirmed.

BENNETT, REID, LEACH, and HERR, Commissioners, concur.

By the Court: It is so ordered.

Note—See under (1) 18 C. J. p. 423, §502; 427, §511; anno. L. R. A. 1916B, 382; 4 R. C. L. p. 501; 2 R C. L Supp. p. 1151. 12 R. C. L. p 232; 2 R. C. L. Supp. p. 1406; 5 R. C. L. Supp. p. 637. (2) 4 C. J. p. 899; §2869; p. 900. §2870; 2 R. C. L. p. 204; 1 R. C. L. Supp. p 442; 4 R. C. L. Supp. p. 90; 5 R. C. L. Supp. p. 81; 6 R. C. L. Supp. p. 73. (3) 4 C. J. p. 898, §2869.