KATHERYN BURGDORF ET AL., Appellants, v. GEORGE J. KEEVEN ET AL. —No. 38454.—174 S. W. (2d) 816.

Division One, October 4, 1943.

Rehearing Denied, November 1, 1943.

*E. McD. Stevens* for appellants.

1006

*John J. McAtee* and *Philip A. Foley* for respondents.

CLARK, J.—Appellants, as plaintiffs, filed their petition in the circuit court alleging that plaintiffs and some of the defendants are all of the heirs of Henry Keeven who died, intestate, on November 14, 1941; that defendant, Anna Keeven, is the wife of a co-defendant, George Keeven, and defendant, Sudekum, is administrator of the Henry Keeven estate. The petition alleging mental incapacity of the grantor and undue influence by the grantees, seeks to set aside a deed executed on June 16, 1941, by Henry Keeven to defendants George Keeven and wife, describing a fifty-five acre tract of land, and to partition that tract and other land belonging to said Henry Keeven at his death.

George Keeven and wife, the only defendants to file answer, admitted that Henry T. Keeven conveyed the fifty-five acre tract to them, but denied all other allegations of the petition.

After a trial the chancellor entered a decree in favor of defendants, dismissing plaintiffs' petition without prejudice to the rights of the parties to maintain a new action for partition of the land not in controversy. Plaintiffs have appealed.

Henry Keeven, a widower, was about 83 years old at his death. He left surviving him three sons, three daughters and a number of grandchildren. His estate consisted of about $4,300.00 on deposit in bank, improved real estate in the town of St. Ferdinand of the value of about $1,500.00, and residence property in St. Charles of the value of about $3,800.00. The fifty-five acre tract in dispute was valued at about $15,-000.00. On this latter farm Henry Keeven and his wife lived for many years and reared their family. His wife died and the children, one by one, married and moved away, the defendant George Keeven being the last to go in 1932. Then Henry Keeven rented the farm for an annual rental of $385.00, but continued to live there until 1938 when he went to live with one of his daughters, Mrs. Henke. In April, 1941, Mr. Henke brought the old man to the home of George Keeven. Some time after Henry Keeven executed the deed to George and wife the three of them moved to the old home and were living there when Henry Keeven died. There is some evidence of minor disagreement between Henry Keeven and some of his children, including George, but there is no evidence that he had any especial dislike for any of them. He was economical, living within and saving a part of his income from the rent of his properties, which rent aggregated something like $800.00 per annum. In 1939 he sold a piece of real estate

for $1,900.00, which seems to have been all it was worth. Other than that one deal, he had very little, if any, business to transact in his later years except the collection of rent. After he went to live with George the rents were collected by George or his wife.

For the plaintiffs: Four lay witnesses gave opinions that Henry Keeven was mentally unsound at and prior to the execution of the deed. They were Herman Keeven, a son, Mrs. Burgdorf, a daughter, Henry Henke, husband of a daughter, and Bernard Winter. As foundation for their opinions, these witnesses testified that at times Henry Keeven failed to recognize relatives or friends; that on some occasions when he had visited one of the children in the neighborhood he said he had been to see his son Theodore at Salisbury, more than one hundred and fifty miles distant; that he erroneously thought one of his friends had drowned; that he thought his brother who had been dead several years was still living; that when one of the daughters, without his knowledge, took $450.00 from his pocket and divided it with defendant, George Keeven, the old gentleman failed to discover his loss or, if so, did not complain; that on one occasion he forgot he had collected rent and tried to collect it again; that he was feeble, tired easily and had dizzy spells. There was testimony of a meeting of the children at the home of one of the daughters in September, 1940, when the advisability of appointing a guardian for the old man was discussed and George participated in the discussion. No guardian was appointed, but George and another went to the bank to try to find out how much money their father had on deposit and to prevent him from checking it out. The banker testified that the old man gave only three checks on the account for a total of a little more than $200.00. Two or three witnesses said that after the deed was executed George told them he had a long lease on the farm; also, that he was acting as guardian for his father. One witness said that Anna Keeven, wife of George, made a similar statement.

Mary Henke, a daughter who was named as a defendant, but who testified for plaintiffs, [819] said on cross-examination that George was the only child who did not have property and her father said he was going to see that George got the home place.

Plaintiffs offered a written instrument (Exhibit B) dated November 11, 1941, signed by some of the heirs and by George and wife. This was excluded on objection of defendants that it constituted an unsuccessful attempt to compromise.

For the defendants: Ten lay witnesses who had known Henry Keeven for from one to fifty years said he was mentally sound in their opinion and seemed in fairly good health until shortly before his death.

Mrs. Hoepf said Henry Keeven told her he wanted George to have the home place.

Dr. Schudde said he knew Henry Keeven for 15 or 20 years and was his physician; that he was mentally sound and capable of managing his affairs. Over the objection that it was a privileged communication between patient and physician, this witness was permitted to testify that in 1936 Henry Keeven told him: "George is always a good boy and he always stays with me and he always helps me and is going to get the farm".

Mr. McAtee, an attorney who represented defendants at the trial, was permitted to testify over plaintiffs' objection that any information witness had was gained as attorney for defendants and further that it is a violation of the rules of the Supreme Court for an attorney to testify in a case which he is also trying. The witnesses said that in June, 1941, a Mr. Farris, Henry Keeven, George Keeven and wife came to his office and directed him to draw a deed and contract; that they came back a few days later and Henry Keeven signed the deed and contract and George and his wife signed the contract; that George paid him for preparing the papers; that Henry Keeven was sane and knew how he wanted the papers prepared.

The deed recited a consideration of "one dollar and other valuable considerations", and was filed for record on the day it was executed.

The contract recited that Henry Keeven desired George and wife to have the fifty-five acre tract as all the other children owned property, and that he deeded it to them in consideration for their agreement to support and care for him and permit him to live with them when he so desired.

Over plaintiffs' objection on the ground of the death of the other party to the deed, defendant George Keeven was permitted to testify. We hold that the chancellor properly overruled this objection as being too general for, under the statute, the witness was not disqualified for all purposes. [Elsea v. Smith, 273 Mo. 396, 202 S. W. 1071, l. c. 1073; Goodrich Rubber Co. v. Robertson, 222 Mo. App. 510, l. c. 515, 281 S. W. 75; Stephenson v. Stephenson, 351 Mo. 8, 171 S. W. (2d) 565, l. c. 571.] However, we think there is abundant evidence to support the decree without a consideration of the testimony of this witness. [Clark v. Skinner, 334 Mo. 1190, l. c. 1199, 70 S. W. (2d) 1094.]

The testimony of Dr. Schudde was properly admitted. He did not testify as to any information acquired in his capacity as the physician of Henry Keeven, for the purpose of treating him or in connection with such treatment. [Baker v. Lyell, 210 Mo. App. 230, l. c. 247, 242 S. W. 703; Hamilton v. Crowe, 175 Mo. 634, 75 S. W. 389.]

As to the competency as a witness of the attorney, Mr. McAtee: Our rule, number 35, subsection 19, is intended to discourage, but does not completely forbid, an attorney from testifying in a case which he actively assists in trying. In this case the attorney's testimony was important and he was the only available witness, other than the de-

fendants, who was present when the deed was executed. Farris had died before the suit was filed. It would have been well for the attorney to have left the conduct of the trial to other counsel, but our rule does not exclude his testimony. The attorney's testimony was not incompetent as being a privileged communication. [Clark v. Skinner, 334 Mo. 1190, l. c. 1199, 70 S. W. (2d) 1094; Canty v. Halpin, 294 Mo. 96, 242 S. W. 94.]

Plaintiffs argue that their exhibit "B" should have been admitted as an admission by defendants against interest. We do not think the instrument contains any admission, but is clearly an attempt to compromise and was properly excluded. Notwithstanding the fact that in September, 1940, the children, including George, discussed the advisability of appointing a guardian, there is only slight evidence in this case that Henry Keeven was mentally incapable of managing his affairs. True, he was an old man and suffered from the [820] infirmities of age, but from the record we think the evidence greatly preponderates in favor of defendants on the issue of mental capacity. Certainly the chancellor who saw and heard the witnesses was better able than we to judge of the reasonableness and credibility of their testimony and to decide this issue of fact.

As to the issue of undue influence: There is no direct evidence that either of the defendants ever demanded, requested, or even suggested, that Henry Keeven deed the land to them. At the date of the deed, June 16, 1941, Henry Keeven was living with the defendants, George Keeven and wife, and had been living with them since some time in April preceding. Sometime after the old gentleman came to them, (whether before or after the deed was executed is not clear) the defendants collected his rents and made statements that they were managing his affairs. The defendants were present when the deed was executed and George Keeven paid for preparing it. From these and other facts mentioned above, appellants argue that a confidential relationship was established which raised a presumption of undue influence and cast the burden on defendants to rebut the presumption. Appellants cite a great many cases on this point, but refer to only a few of them in the argument portion of their brief. It would unduly lengthen this opinion to discuss in detail all the cases cited. Most of them are early cases which announce a doctrine that has been later modified. Some of them were expressly, others impliedly, overruled by this court en banc in Loehr v. Starke, 332 Mo. 131, l. c. 145, 56 S. W. (2d) 772. There we said:

"Thus it appears that it is not the rule in this State that a mere confidential relation raises a presumption of undue influence. The weight of authority is against such rule. [Re Llewellyn's Estate, 66 A. L. R. 222, note 228; 1 Woerner Law of Administration, p. 63; 1 Underhill on Wills, p. 208; Gardner on Wills, p. 180.] The case of Mowry v. Norman, 204 Mo. 173, 103 S. W. 15, and other cases contain-

ing statements indicating that a mere confidential relation raises a presumption of undue influence are to that extent overruled''.

The rule announced in that case has been consistently followed by this court. [See Horn v. Owens (Mo.), 171 S. W. (2d) 585, l. c. 591; Hamilton v. Steininger, 350 Mo. 698, 168 S. W. (2d) 59 and cases cited.]

A contract between one who is old and infirm and those who stand in a confidential relation toward him should be subjected to careful scrutiny. In such cases undue influence need not be proved by direct testimony, but it cannot be presumed from proof of a confidential relation alone. The law does not ban the influence which springs from the natural affection of a parent for his child, nor does it preclude the parent, if in the exercise of his free will, from bestowing his bounty on one child more generously than on his other children.

■ Appellants ask us to infer undue influence from the fact that George Keeven, after the deed was made, stated that he had a long lease and the further fact that he did not tell his brothers and sisters about the execution of the deed. But over and against those facts there are other facts which we must consider. The deed was recorded on the same day it was delivered. According to the testimony of Dr. Schudde, as long ago as 1936, at a time when no witness says Henry Keeven was mentally unsound, and at a time when he was managing his own affairs, and when George Keeven was not present, Henry Keeven stated that he intended to give the farm to George and stated the reason, to wit: that George alone of his children was propertyless, and that he had been good to and would care for his father through the rest of his life. Henry Keeven stated the same purpose and gave the same reason in the contract which he signed on the same day he signed the deed. He stated the same purpose to Mrs. Hoepf and to Mrs. Henke, a daughter of Henry Keeven. In our view these facts show a fixed purpose over a period of years on the part of Henry Keeven to deed the land to his son George, and dispel any inference of undue influence on the part of the latter.

We hold that the chancellor did not err in refusing to set aside the deed from Henry Keeven to George Keeven and wife, but did err in refusing partition as to the other land described in the petition. Plaintiffs proved title in Henry Keeven, deceased, to the St. Charles and St. Ferdinand (now Florissant) properties and proved the heirship of the parties.

■ To support that portion of the decree refusing partition of the St. Charles and St. [821] Ferdinand tracts, respondents cite: Young v. Young, 307 Mo. 218, 270 S. W. 653; Fulk v. Williams (Mo.), 37 S. W. (2d) 511, and Keller v. Keller, 338 Mo. 731, 92 S. W. (2d) 157. In the Young case, whether correctly or not, under its facts, the right to partition was upheld. In the Keller case all the owners were not in court. In the Fulk case, under the court's ruling, none of the

plaintiffs had any interest in the land. Those cases are not in point. In the instant case the parties are tenants in common as to the St. Charles and Florissant tracts and plaintiffs are entitled to a judgment for the partition of said tracts notwithstanding that their petition also prays for partition of other land in which they have no interest.

Accordingly, the decree is reversed and the cause remanded with directions that a decree be entered holding that none of the parties, except George Keeven and Anna Keeven, his wife, have any interest in the fifty-five acre tract and for partition of the other tracts under proper orders of the court. All concur.