SMITH et al. v. RIDPATH.

No. 34412.  Nov. 25, 1952.

Rehearing Denied Jan. 6, 1953.

*251 P. 2d 1036.*

P. D. Erwin, Chandler, for plaintiffs in error.

John B. Logan and Joe Young, Chandler, for defendant in error.

PER CURIAM.  Nannie S. Ridpath died intestate at Chandler, Lincoln county, Oklahoma, September 16, 1948, leaving no children, no father nor mother, and leaving only her husband, M. T. Ridpath, John H. Smith, a brother, and Lula Jarvis, Lillian B. Marshall and Delilah Watkins, sisters. M. T. Ridpath was appointed administrator of the estate September 30, 1948, and proceeded to administer upon the estate. February 19, 1949, he filed his petition to settle his final account, determine heirs, distribute the personal property and assign the real estate. Notice was given thereon and the petition was set for hearing March 17, 1949.

On March 8, 1949, plaintiffs in error herein filed their objections to the final account and the petition for distribution. A hearing was had thereon and the probate court overruled their objections and they appealed to the district court. From an adverse ruling of the district court they have appealed to this court.

They set out seven specifications of error. The issues thus presented will be dealt with as they were presented.

(1) Appellants contend that the administrator was an incompetent witness to testify concerning the marriage and the heirship of his wife, the acquisition of the Chandler property, the source of the funds deposited in the Union National Bank, the conveyance made by him to his wife, the occupancy of the homestead, payment of the mortgage, and that he was a disabled veteran.

They cite a number of authorities, among which is 12 O.S. 1941 §§384 and 385.  From examination of all of these authorities we find that they deal with contracts relating to civil actions and assigned actions from deceased persons, and attempts to maintain suits acquired from the deceased prior to death, and to enforce such contracts against the administrator.  Such are not the facts in the present case.

We call attention to the previous ruling of this court in Ward v. Ward, 189

Okla. 609, 119 P. 2d 64, wherein the court said:

"The inhibition provided under section 271, O.S. 1931, 12 Okla. St. Ann. §384, is against the party who has acquired title to the cause of action immediately from the deceased person, when he becomes a witness and offers to give testimony in respect to any transaction or communication had personally with the deceased. Webb, Adm'r, v. Burnam et al., 111 Okla. 248, 239 P. 653."

See, also, Preston v. Berry, 205 Okla. 63, 234 P. 2d 417, and Wright v. Quinn, 201 Okla. 565, 207 P. 2d 912.

We observe appellants' contention that the surviving husband is an incompetent witness about business transactions with his deceased wife on contest with heirs on distribution, and his authorities cited to sustain said principal, but there is a definite distinction which must be made in this action. The distinction being in this case that the administrator was testifying to certain facts as administrator of the estate of Nannie S. Ridpath, deceased, and not testifying as a surviving husband about business transactions with his wife.

Examination of the testimony convinces us that the trial judge was very careful to observe and enforce the rules of evidence applicable in the administration of estates.

We find no error in permitting the administrator to testify.

(2) Appellants contend that the husband is liable for the funeral expenses of his wife, and in support of their contention they cite several authorities, among which are 32 O.S. 1941 §3; Lang v. Banner, 189 Okla. 606, 118 P. 2d 639; 11 Am. Jur. p. 219, §67.

In Lang v. Banner, supra, the facts are entirely different from the instant case. Tom Banner was a son by a former marriage of Flora Morse. Flora Morse died intestate October 29, 1938. December 1, 1938, her husband, George Morse, died intestate. They had two

bank accounts, one for $2,800 and one for $916. P. J. Lang was appointed as administrator. November 1, 1938, three days after the death of his mother, Tom Banner paid to Moore Funeral Home the funeral expense of his mother, amounting to $335, and took an assignment of the claim, and after the death of George Morse he presented his claim to the administrator, who rejected it, and he brought suit. The court held he was entitled to recover. We believe this is good law, but not entirely applicable in the instant case.

The majority rule in this state is that the funeral expenses are a proper charge against the estate, as was held in Earnest v. Earnest, 187 Okla. 258 102 P. 2d 602. And to the same effect is In re Wagner's Estate, 178 Okla. 384, 62 P. 2d 1186, and to the same effect is In re Wilson's Estate, 160 Okla. 23, 15 P. 2d 825.

We find no error in the second specification.

(3) At the time of the marriage of M. T. Ridpath to Nannie S. Smith, he owned 10 lots, upon some of which the homestead was located. He lived there and he took his bride there. A little over two months after their marriage he paid off a mortgage of $1,500 on that home and deeded it to his wife, Nannie S. Ridpath, and they lived in that home during the balance of her natural life. That was their homestead.

Nannie S. Ridpath had a bank account at the time of their marriage and that which she had at the time of her death and that which she received from her father's estate during her lifetime was by the district court set apart as her separate property, but that which was acquired by their joint efforts and the community property was set aside to the surviving husband, at whose death, if any of the said property still remains, to descend to, one-half to the heirs of M. T. Ridpath, and the other half to the heirs of deceased Nannie S. Ridpath, whom he found to be John H. Smith, Lillian B. Marshall, Lula

Jarvis and Delilah Watkins, in equal shares, according to the right of representation.

In this judgment we concur.

As was said by this court in Re Griffin's Estate, 199 Okla. 676, 189 P. 2d 933:

"Under the proviso of 84 O.S. 1941 §213 (2), the surviving spouse inherits the whole estate in property acquired by the joint industry of husband and wife during coverture, the title to which is vested in the spouse dying first and without issue, and on the death of the survivor without issue and without having disposed of such property by will or otherwise, such property descends from the survivor to the classes named in said proviso, the heirs of each spouse succeeding in equal parts to the title of the last survivor."

We find no error in the third specification.

(4) Appellants say that the distributive share of the deceased in her father's estate was separate property. In this we agree, and there is no error presented here for the reason that the lower court so held and this contention was disposed of under the third specification of error.

(5) The records show that on June 23, 1937, a deposit was made by Nannie Ridpath in her savings account in the sum of $382. This was added to the sum that was there previously, but it is not shown that the administrator, as such, or the husband of Nannie S. Ridpath, M. T. Ridpath, ever at any time withdrew any money from that savings account, but it was only handled so far as the record shows by the deceased, and we are unable to say whether or not she spent that money or whether it was in the bank on the day she died. There is certainly no contention before this court to the effect that this money was given to M. T. Ridpath, the administrator, or to M. T. Ridpath, her husband, or was ever used by him.

(6) The same situation is true in appellants' sixth specification in error as in their fifth. There is no denial that she received the $500. There is no controversy over this $500, as the record shows a deposit of $484.45 was made by the deceased in the First National Bank on February 16, 1948. It was her money and she could do what she pleased with it, as she apparently did by depositing it in her checking account.

We find no error in the court's ruling on this question.

(7) Appellants contend that the lots sold by Ridpath July 1, 1948, being lots 6, 7, 8, 9 and 10, in block 9, East Chandler addition, for $500 to J. L. Sanborn and wife, belonged to Mrs. Ridpath, and her heirs are entitled to charge the administrator with the payment of that $500.

These were not trust funds. These lots were owned by Ridpath before his marriage and were deeded to his wife after the marriage, and when these lots were sold his wife joined him in the conveyance. He received the money, put it in the bank and he and she no doubt lived upon it or out of it. It was a part of the whole estate and no doubt considered by the court as such.

For these reasons, and finding no error, the judgment of the trial court should be and the same is hereby affirmed.

This court acknowledges the services of Attorneys, Harvey F. Allen, John H. Poe and John T. Gibson, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the court.

HALLEY, V. C. J., and WELCH, CORN, GIBSON, DAVISON, O'NEAL, and BINGAMAN, JJ., concur.