Bertha R. SLATER, Plaintiff in Error,

v.

MUTUAL BENEFIT HEALTH & ACCIDENT ASSOCIATION, Defendant in Error.

No. 40552.

Supreme Court of Oklahoma.

July 7, 1964.

Floyd L. Martin, Oklahoma City, for plaintiff in error.

Duvall & Head, Oklahoma City, for defendant in error.

HALLEY, Vice Chief Justice.

Parties will be referred to as in the trial court or by name.

Bertha R. Slater was the wife of Jacob Slater. On March 29, 1921, Jacob Slater took out a policy of insurance commonly known as a sick and accident policy with the defendant. It covered accidental death of the insured. This policy was maintained until the death of the insured on January 6, 1961.

It appears that on or about December 15, 1960, the plaintiff and her husband went for a drive in their automobile and when they returned home, Mr. Slater got out of the car and went into the house to open the back door to let plaintiff in the house and she drove the car in the garage. After getting out of the car she had an attack of some nature and became unconscious. When she regained consciousness she was in their home. As to who brought her into the house, the record is not clear.

A physician was called for the plaintiff and he treated her but did not examine the insured, Jacob Slater. Mrs. Slater testified as to the condition of health of her husband from December 15, 1960, to January 6, 1961, the date of his death. On the Sunday following December 15th, the doctor who had treated Mrs. Slater on December 15th was called to attend Mr. Slater. This doctor continued to visit Mr. Slater until his death on January 6, 1961.

The record in this case fails to reveal any accident of any kind that Mr. Slater had on December 15, 1960. An attempt was made to show that he carried the plaintiff into their home after she fell but the evidence on this point was never admitted.

There is the testimony of two doctors of medicine who were specialists in cardiovascular troubles that Mr. Slater had hardening of the arteries or arteriosclerosis and that this was a disease and that it contributed to his death; that Mr. Slater suffered a cerebral thrombosis and his death was not due to accident.

The physician who treated Mr. Slater on Sunday, December 18, 1960, testified that Mr. Slater had some form of cerebral vascular accident that was due to excitement and overexertion. On the death certificate this doctor gave as the cause of death "cerebral hemorrhage, arteo-sclerosis and friable blood vessels." This doctor said

that arteriosclerosis was not a disease but the two specialists testifying for the defendant said it was a disease.

We can see no liability established against the defendant in this case. The policy in its very first provision states:

"THIS POLICY PROVIDES BENEFITS FOR LOSS OF LIFE, LIMB, SIGHT OR TIME BY ACCIDENTAL MEANS, OR LOSS OF TIME BY SICKNESS AS HEREIN LIMITED AND PROVIDED.

## MUTUAL   BENEFIT

## HEALTH   AND   ACCIDENT

### ASSOCIATION
### OMAHA

(Herein called Association)
DOES HEREBY INSURE

| INSURING CLAUSE |

............................ JACOB SLATER .............................. (herein called the

Insured) of City of .................... OKLAHOMA , State of .................... OKLAHOMA

by occupation ................................................ CONTRACTOR & BUILDER ................

against loss of life, limb, sight, or time, resulting directly and independently of all other causes, from personal bodily injuries sustained through purely Accidental Means (Suicide, sane or insane, is not covered), and against loss of time on account of disease, as specified in the following Schedules, respectively, subject, however, to all the provisions and limitations hereinafter contained.

### Accident Indemnities

Part A.                    SPECIFIC LOSSES

If the Insured shall, through accidental means, sustain bodily injuries as described in the Insuring Clause, which shall independently and exclusively of disease and all other causes, immediately, continuously and wholly disable the Insured from the date of the accident and result in one of the following specific losses within thriteen weeks, the Association will pay in lieu of all other indemnity:

For Loss of Life ........$2,000.00 And in addition, $20 a week for that part of the period between the date of accident and the date of death.

For Loss of Both Eyes ... 2,000.00
For Loss of Both Hands .. 2,000.00

For Loss of Both Feet ....$2,000.00
For Loss of One Hand and One Foot .............. 2,000.00
For Loss of Either Hand .. 700.00
For Loss of Either Foot .. 700.00
For Loss of Either Eye .. 500.00

---

"Loss in every case referred to in the above schedule for dismemberment of hands and feet shall mean severance at or above the wrist or above the ankle joint, respectively, and the loss of eye or eyes shall mean the total and irrecoverable loss of entire sight thereof. Only one of the amounts named in this part will be paid for injuries resulting from one accident."

■ There was no accident shown by the evidence. A motion for directed verdict for the defendant could well have been sustained yet the trial judge in the abundance of caution submitted the matter to the jury under proper instructions and there was sufficient evidence to justify the jury's verdict. The defendant's doctors' testimony was an answer to plaintiff's claim of cause of death.

The plaintiff's first two propositions for reversal are as follows:

"The Trial Court erred in refusing to direct a verdict and enter judgment in favor of the Plaintiff and against the Defendant upon the pleadings and the opening statement of counsel, as to Paragraph I of the insurance contract."

"The Trial Court erred in refusing to direct a verdict and enter judgment in favor of the Plaintiff and against the Defendant at the conclusion of all the evidence, as to Paragraph I of the insurance contract."

■ Counsel for plaintiff contends that, Under Part I of the Illness Indemnities which is as follows:

"RETURN OF PREMIUMS

"In event of the death of the Insured under the provisions of this policy, providing this policy has been in force for one year, the Company agrees to pay in addition to the amount otherwise payable, an amount equal to all the premiums paid by the Insured on this policy, plus compound interest at the rate of 4% per annum from the date of the payment of each of said premiums to the date of loss of life of the Insured.",

the plaintiff is entitled to the return of premiums as therein provided. We do not agree with her on this point. There was no evidence of the death of Mr. Slater under the provisions of the policy. Nowhere under the illness indemnities is there any provision in regard to death from illness. Coverage for death is only for accidental death and the evidence of accidental death was

not established. Plaintiff's argument that she is entitled to a liberal construction of the provisions of the insurance contract is sound but it has no application to this case because of the plain provisions of the insurance contract.

Plaintiff's third proposition for reversal is as follows:

"Where an issue is clearly defined by the pleadings and the proof, Plaintiff is entitled to have specific instructions upon such issue presenting her theory in accordance with the testimony offered and the law relating thereto when properly requested."

The only trouble with this is there was no evidence that Jacob Slater's death resulted from "purely Accidental Means." The only evidence of the plaintiff bearing on this issue was the testimony of the doctor who treated Slater five days after his wife fell. He said that the cerebral vascular accident of Mr. Slater was from excitement and overexertion. Yet there was no evidence of overexertion except plaintiff's doctor and he did not testify to an accident. No one testified that Slater carried his wife after her fall. He may have and he may not have.

■ We have read plaintiff's requested instructions and also the instructions given. There was no error in refusing plaintiff's requested instructions and the instructions given by the court. We find no error in refusing plaintiff's requested instructions as they were too favorable to the plaintiff. We think the court's instruction fully and correctly covered the issues raised in this case. The jury was instructed that if they found that the deceased Jacob Slater died from purely accidental means independently and exclusively of disease the plaintiff should recover. This with the other instructions fairly placed this case before the jury. We have said many times that instructions must be construed together as a whole, and if, when so considered they properly state the law it is sufficient. Smith v. Barry, 208 Okl. 606, 258 P.2d 165; 14 Okla.Dig., Trial,

Plaintiff's proposition four, that the instructions as a whole were "confusing, misleading and over-emphasized one theory or defense", is not well taken. We consider these instructions as being clear and correctly presenting the issues of the case.

■ The plaintiff's fifth and last contention of error is that the trial court erred in not permitting plaintiff to testify that Jacob Slater told her that he carried her into the house and that was the way that she got in from the backyard during her loss of memory or unconscious period. This was hearsay and we see no error on the trial court's ruling. Lusk v. Phelps, 71 Okl. 150, 175 P. 756, cited by plaintiff is not in point here as that case involved a conversation between the deceased and the foreman of the defendant while in the case at bar it is a purported conversation between deceased and plaintiff. We have held that a witness may not testify from hearsay as to another's age. Freeman v. First Nat. Bank, 44 Okl. 146, 143 P. 1165. We have also said that statements made in the absence of defendant by a person not shown to be defendant's agent cannot bind him and are objectionable as hearsay. Pierce Oil Corporation v. Myers, 117 Okl. 161, 245 P. 863. In Southwestern Bell Telephone Company v. Nelson, Administratrix, et al., Okl., 384 P.2d 914, we held:

"12 O.S.1961, Sec. 385, as well as the common law, prevents one spouse from giving testimony falling under the head of private communications between them during or after the marital relation has ceased; but neither Section 385 nor the common law prevents one spouse, after the marriage relation has been terminated, from testifying for or against the other, or for himself, regarding independent facts within the knowledge of the witness, and not a communication."

In an earlier case, Commonwealth Life Ins. Co. v. Brown, Okl., 259 P.2d 308, we said:

"In an action brought by a beneficiary to recover death benefits under a group

accident insurance policy evidence as to declarations of one since deceased made about twelve days after he had sustained an accidental injury to the effect that the injury occurred while working on his job was not admissible as being a part of res gestae, nor was it admissible under any other exception to the hearsay rule."

See also 31A C.J.S. Evidence § 205.

Clearly such testimony violates the hearsay rule. There was evidence that neighbors were present when plaintiff was brought into her home. They were not examined on this point.

We find no error in the trial of this case and it is affirmed.

BLACKBIRD, C. J., and DAVISON, JOHNSON, WILLIAMS, JACKSON and BERRY, JJ., concur.