The HEIRS, ETC., of R. D. PAYNE, Deceased, Ennid Ferguson and Lee Payne, Plaintiffs in Error,

v.

Alexander Linder SEAY, Executor of the Estate of Lena Payne, Deceased, Defendant in Error.

No. 42610.

Supreme Court of Oklahoma.

Dec. 23, 1970.

John B. Doolin, Newcombe, Redman & Doolin, Lawton, for plaintiffs in error.

William L. Anderson, Oklahoma City, James H. Ivy, Waurika, for defendant in error.

DAVISON, Justice.

The Heirs, Executors, Administrators, etc., of R. D. Payne, Deceased, Ennid Ferguson and Lee Payne (defendants in the trial court) appeal from a judgment rendered in favor of Alexander Linder Seay, Executor of the Estate of Lena Payne, Deceased (plaintiff below) whereby the title to a large tract of land was quieted in plaintiff and against the defendants. The parties will be referred to by their trial court designation or by name.

The principal question presented in this appeal is whether the lands were acquired by the joint industry of Lena Payne and her second husband R. D. Payne, as provided in the Second Subdivision of 84 O.S.1961, § 213.

Lena Payne, formerly Seay, and Alexander Linder Seay, were originally the widow and son respectively of Oscar Seay, from whom they acquired, by inheritance or devise, a ranch consisting of many acres of land. In January, 1945, Lena married R. D. Payne. At the time of the marriage the only property owned by R. D. Payne was his automobile and some personal effects.

On October 30, 1946, Lena conveyed to R. D. Payne, for "One Dollar, in hand paid, * * * and other good and valuable considerations," a one-half interest in 900 acres of land. On January 28, 1948, Lena conveyed to R. D. Payne, for a like consideration, the remaining title to this land. On January 20, 1950, Lena and R. D. Payne conveyed to R. D. Payne, for a like consideration, a one-half interest in approximately 2000 acres of land. No documentary revenue stamps appear upon any of the above deeds. In each of the above years Lena made United States Gift Tax returns for the above conveyances. She paid no tax on the returns for 1946 and 1948, and paid $227.54 on the 1950 return.

The lands occupied and owned or held in trust for Alexander Seay adjoined those owned by Lena and/or R. D. Payne, but the boundary between them was broken or uneven. In an attempt to "square up" their respective properties there was an exchange of deeds, whereby on October 22, 1952, insofar as is pertinent to this appeal, (1) Lena as Trustee under the will of Oscar Seay for the benefit of Alexander Seay, conveyed the surface of 390 acres to herself and R. D. Payne, (2) Lena, as said Trustee, conveyed the surface of 410 acres to R. D. Payne, and (3) Alexander Seay, joined by his wife, conveyed the surface of 490 acres to R. D. Payne. In return Alexander Seay received conveyances for approximately the same acreage.

R. D. Payne died intestate on December 27, 1963. No children were born of his marriage to Lena. He left surviving, his widow Lena, his sister Ennid Fergu-

son (defendant) and his brother Lee Payne (defendant). Lena Payne died testate September 2, 1965, leaving a will dated January 7, 1964, in which, after providing for payment of expenses of sickness, burial and taxes, there was the following provision:

"All the rest, residue and remainder of my property of whatsoever kind and wheresoever located, be same real, personal and/or mixed, and including any and all property and Estate that I may have inherited or be entitled to from my deceased husband, R. D. Payne, I bequeath, give, and devise unto my son, Alexander Linder Seay, absolutely and without restriction or limitation of any kind or character."

Plaintiff Executor of the Estate of Lena Payne then filed this action to quiet title in him to the lands acquired by R. D. Payne by virtue of the above deeds. The defendants answered that the lands were not acquired by the joint industry of Lena and R. D. Payne, that the conveyances were to effect a gift of the lands to R. D. Payne, and that immediately upon the death of R. D. Payne the interest of R. D. Payne vested one-half in Lena Payne, and one-fourth each in Ennid Ferguson and Lee Payne.

Plaintiff took the position that the conveyances from Lena to R. D. Payne were not gifts, that the consideration for the deeds was the promise of R. D. Payne to stay on at the ranch and work and manage the same.

At the beginning of the trial the trial the parties stipulated that during the existence of the marriage R. D. Payne managed and operated the ranch properties owned by Lena and/or himself and for such services received no regular compensation as a salaried employee of Lena.

Defendants first introduced their testimony in support of their contention that the conveyances from Lena to R. D. Payne were in the nature of gifts to Payne. Ennid Ferguson and her two daughters collectively testified that on at least two occasions, in 1951 or 1952 and in 1953, R. D. Payne

stated in the presence of Lena that "Lena had given him half of her land;" that "Lena gave me half of the ranch." They stated also that Lena "didn't make any comment" when R. D. Payne made this statement. The defendant Lee Payne testified that in 1953, while he was working on the ranch, R. D. Payne stated in the presence of Lena that "Lena had give him half the ranch, deeded him half of the land," that Lena said "she thought she had run it long enough, she would let him have that and he could take care of it hisself." Lee Payne further testified that in the 1950s Lena "was in bad health," that the operation of the ranch was pretty big with a lot of responsibility for a woman by herself, and that "All I know is that she just deeded him half the ranch, half the land."

The testimony in behalf of plaintiff consisted of that given by plaintiff himself, the testimony of James H. Ivy (one of the attorneys for plaintiff), and a married couple by the name of Henderson.

The attorney Ivy testified that he prepared the deed of January 20, 1950, wherein Lena, joined by R. D. Payne, conveyed to R. D. Payne a one-half interest in approximately 2000 acres of land. The witness testified that both Lena and R. D. Payne were present at the discussion preceding the preparation and signing of the deed; that they discussed "what land was going to be involved;" that R. D. Payne "was insistent upon the procedure" and that R. D. Payne said "he wasn't going to stay out there and take care of that ranch just for a Cadilac car and a little spending money," and also "I'm not going to stay here, I'm going to leave if I can't get any more out of it than that."

Plaintiff testified that in the presence of R. D. Payne his mother (Lena) stated that R. D. Payne "told her that he wasn't going to stay out there and work and manage her business, manage her ranch and see that her cattle were taken care of without any pay other than a living; that he would have to have some land as compensation for his work, payment for his work," and that R.

D. Payne said "thats right." Plaintiff testified that Lena was eight years older than R. D. Payne and that "she was in bad health all those years."

The Hendersons testified that in August, 1964 (after death of R. D. Payne) Lena told them she had deeded some land to R. D. Payne because he felt he was not getting anything for his work, was not getting fair treatment, and that she deeded the land to R. D. Payne for his services as ranch manager.

Both sides preserved their respective objections to introduction of the above testimony.

The trial court found and concluded, among other things, that the conveyances from Lena to R. D. Payne all recited a valuable consideration and, in fact, were made as a result of an agreement between Lena and Payne that Payne would manage and take care of the ranch for Lena, and that Payne did assume and manage the ranch properties until the time of his death.

The trial court further concluded that the property was acquired by the joint industry of Lena and R. D. Payne during coverture within the meaning of that portion of the Second Subdivision of 84 O.S.1961, § 213, which provides as follows:

"* * * Provided, that in all cases where the property is acquired by the joint industry of husband and wife during coverture, and there is no issue, the whole estate shall go to the survivor, at whose death, if any of the said property remain, one-half of such property shall go to the heirs of the husband and one-half to the heirs of the wife, according to the right of representation."

The trial court rendered judgment incorporating therein the above findings and conclusions, and therein found and adjudged that Lena had inherited the entire interest in the property, that the will of Lena, supra, had disposed of said property by devising the same to Alexander Linder Seay, and quieted title against the defendants in favor of plaintiff.

Before proceeding to a consideration of those propositions of error we are required to determine in disposing of this appeal we direct attention to the following circumstances and rules of law.

The parties to the action do not question the validity or the legal sufficiency of the deeds to transfer the title to the property to R. D. Payne. All of the evidence of the parties was directed at the consideration clause in the deeds.

■ In Lindsay State Bank v. McGrew, 96 Okl. 74, 219 P. 904, we held that the consideration clause in a deed of conveyance is conclusive for the purpose of giving effect to the operative words of the deed; but for every other purpose it is open to explanation by parol proof, and is prima facie evidence only of the amount, kind, and receipt of the consideration, and parol evidence is admissible to show what the actual consideration was. See also Webb v. Burnam, 111 Okl. 248, 239 P. 653; Tayiah v. Bunnell, 77 Okl. 40, 186 P. 240; Kirkpatrick v. Jacobson's Lifetime Buildings, Inc., Okl., 467 P.2d 489.

■ Defendants contend that the testimony of the Hendersons was hearsay and therefore inadmissible. We agree with this contention.

The general rule is that the testimony as to what a deceased person said during his lifetime is hearsay and it is not rendered competent by the fact that the declarant has died since such declaration was made. Slater v. Mutual Benefit Health & Accident Assn., Okl., 393 P.2d 838.

The statement of Lena that the Hendersons related in their testimony was made after the death of R. D. Payne and could not have been made in his presence. It was therefore inadmissible for this further reason. See the Slater case, 393 P.2d 839, at p. 842, and Shaw v. Shaw, Okl., 282 P.2d 748, 752.

■ This inhibition is not applicable to the other testimony, supra, because the remaining statements attributed to Lena and R. D. Payne were related as having been

made in the presence of each other. The conclusions and judgment of the trial court do not have the benefit of the Hendersons' testimony.

■ Defendants urge that the testimony of the attorney James H. Ivy is subject to rejection and is objectionable to the extent that it prejudiced the defendants' case.

Defendants cite in support of this proposition an Advisory Opinion of the Oklahoma Bar Association Legal Ethics Committee, No. 114, appearing at page 96 of an Appendix to Oklahoma Decisions, 341–343 P.2d. The opinion involved Rule 21 of Rules of Professional Conduct [Canons of Professional Ethics, canon 19] concerning the propriety of a lawyer acting as a witness for his client and at the same time acting as counsel for his client in the same case, and provides that "Except when essential to the ends of justice, a lawyer should avoid testifying in court in behalf of his client." The opinion emphatically states that even in the latter instance the lawyer should entirely withdraw from the case if the circumstances will permit, and avoid uniting the character of counsel and witness in the same case.

When this objection was made at the trial the judge was of the opinion that the Canon did not absolutely prohibit the attorney from testifying. There is some indication, from Ivy's statement, that he was the only other person present when Lena and R. D. Payne came to him to have the deed prepared. The purpose of the Canon is to prevent a lawyer from acting in the dual capacity of counsel and witness in the same case.

We have examined the record regarding Mr. Ivy's participation in the trial. The record reflects that William L. Anderson conducted the trial on behalf of the plaintiff, except that Mr. Ivy did question Mr. Henderson.

In 97 C.J.S. Witnesses § 71, there is a discussion as to the impropriety of a lawyer acting as counsel and witness, and a recognition of an exception "where it is essential to the ends of justice," and that it is a matter for the discretion of the court. Obviously the trial court in the instant case exercised its discretion in overruling the objections.

In Burgdorf v. Keeven, 351 Mo. 1003, 174 S.W.2d 816, where a similar rule was under discussion, the court said the attorney's testimony was important and that he was the only available witness present, other than the defendants, when a deed was executed. The court held that the rule did not exclude his testimony.

In the present case we are not condoning the practice of a lawyer acting as both counsel and witness, but we will not say that the trial court abused its discretion in overruling the objection. Under all of the circumstances we will not ignore the attorney's testimony in our consideration of this case.

Defendants further contend that property acquired by gift is not considered as acquired by joint industry during coverture. (84 O.S.1961, § 213, Sub. 2). Under this proposition the defendants also argue that the judgment, holding that the deeds from Lena to R. D. Payne were not gifts, is contrary to the evidence.

The need for discussing the first proposition depends on whether we affirm or reverse the judgment.

In their argument that the judgment is contrary to the evidence the defendants urge that the three gift tax returns are convincing proof that the deeds were in fact gifts.

Title 26 U.S.C.A. § 2512, of the Internal Revenue Code provides that when property is transferred for less than an "adequate and full consideration in money or money's worth," then the amount by which the value of the property exceeded the value of the consideration "shall be deemed a gift," and shall be included in computing the amount of gifts made during the calendar year.

It will be seen that under the above provisions a business transaction wherein the value of the consideration in money was uncertain, contingent, or depended upon fu-

ture happenings, could create a "gift" situation.

In Commissioner of Internal Revenue v. Bristol, 121 F.2d 129 (First Cir., 1941), a purely business transaction between a man and his intended wife, whereby she released her statutory inheritance rights in his estate in return for annuities created for her and real property conveyed to her, was taxed as a gift because of the uncertain value of her release of right to inherit in an estate that could have little, if any, value at the man's death.

▮ In the Bristol case the court held that "consideration" as used in the revenue act, was not the same as a common-law consideration, but means that, when the transferor conveys something away and does not at the same time replace it with money of equal value, or some goods or services capable of being evaluated in money, he is deemed to have made a gift within the taxing laws.

See also Commissioner of Internal Revenue v. Barnard's Estate, 176 F.2d 233, 235 (Second Cir. 1949), and 47 C.J.S. Internal Revenue, § 506.

▮ The evidence in behalf of plaintiff was that the deeds from Lena were given by her in consideration of R. D. Payne staying on and continuing to manage and operate the ranch. The value of this consideration was uncertain in terms of money for his services on a weekly, monthly, or yearly basis, but more importantly because of the uncertainty as to how long either or both of them would live. Under the circumstances and the law the deeds could easily have been non-gift transfers upon which Lena chose to make gift tax returns because she recognized a tax liability on the grounds above set out and to avoid the question being raised at a later date. Her statements regarding the nature of the transfers are consistent with this conclusion.

It is our conclusion that there is competent evidence to support the trial court's finding and judgment that the deeds were not gift transfers of the property. This eliminates any need to determine defendant's proposition that gift property is not considered as acquired by joint industry during coverture.

The trial court concluded that the property, having been conveyed by Lena to her spouse during their marriage, never became the separate property of R. D. Payne, and must therefore be considered as jointly acquired during coverture under the provisions of Subd. 2, of 84 O.S.1961, § 213, supra.

In Smith v. Ridpath, 207 Okl. 638, 251 P.2d 1036, the husband owned property prior to his marriage and later conveyed the property to his wife. They had no children. She died intestate. In a dispute with the wife's brother and sisters the trial court held that the property was acquired by joint efforts of the husband and wife, and vested the same in the husband, at whose death, if any remained, the same was to descend one-half to the heirs of the husband and one-half to the heirs of the wife. We affirmed this judgment citing In re Griffin's Estate, 199 Okl. 676, 189 P.2d 933.

In Griffin's Estate the husband conveyed land to the wife and she died intestate. The husband then died intestate. They had no children. The mother (sole heir of the wife) filed a pleading in the estate proceeding, alleging that the lands were acquired during coverture by the joint industry of the husband and wife, that the lands descended to the husband, and upon his death the lands descended one-half to the wife's heirs and one-half to the husband's heirs. The County Court, and the District Court on appeal, sustained this proposition and distributed the lands accordingly. The husband's heirs appealed to this court alleging several grounds for reversal of the judgment. In our opinion we stated that appellants did contend that the evidence was insufficient to sustain the finding that the property was acquired by the joint industry during coverture. At the close of the opinion we did state that we had examined the evidence bearing on the question of whether the lands were acquired

by joint industry and "think the finding of the court that they were so acquired is not clearly against the weight of the evidence."

The net effect of the above cases is that we have recognized that property conveyed from one spouse to another falls within the category of jointly acquired property.

Plaintiff also cites in support of this conclusion In re Keith's Estate, Okl., 298 P.2d 423. In that case we held that the statute, 84 O.S.1961, § 213, Subd. 2, providing that the whole estate in property acquired by joint industry shall go to the survivor, pertains to an estate in the nature of community property and consequently all property, not falling within the definition of separate property, acquired after marriage by the labor of either spouse, is nevertheless deemed to be acquired by the labor of both spouses. Separate property is defined therein as that acquired by gift, devise or descent, or by exchange of the spouse's individual property.

Under the circustances and our holdings herein the involved lands were not the separate property of R. D. Payne.

It is our conclusion that the judgment of the trial court, that the lands herein were acquired by the joint industry of Lena and R. D. Payne, is not clearly against the weight of the evidence.

By virtue of the provisions of 84 O.S. 1961, § 213, Sub. 2, the whole estate in the lands went to Lena as surviving spouse, provided that if Lena had died without disposing of the same by will or otherwise, such property would have descended one-half to the heirs of each spouse. In re Griffin's Estate, supra.

Lena did make a will, supra, in which she effectively devised to her son, Alexander Linder Seay, all of her interest in the subject property. She had the legal right and power to do this. Under the proviso of Subsection 2, of 84 O.S.1961, § 213, a surviving spouse may, by will, dispose of all property coming to such survivor, acquired by the joint industry of the husband and wife during coverture,

where there is no issue born of the marriage. Bingham v. Horn, 123 Okl. 193, 252 P. 847, and Little v. Cunningham, Okl., 381 P.2d 144.

The judgment of the trial court is affirmed.

All Justices concur.